United States district court — eastern district for Tennessee, civil division

**FILED**

NOV 1 9 2024

Clerk, U. S. District Court
Eastern District of Tennessee
At Chattanooga

David Jonathan Tulis )
% 10520 Brickhill Lane )
Soddy-Daisy, TN 37379 )
davidtuliseditor@gmail.com )
(423) 316-2680 )
  *Plaintiff* )
 )
V. )
 )
 )
Brandon Bennett )
In his personal capacity )
% HCSO patrol services HCSO )
6233 Dayton Blvd. )
Chattanooga, Tenn., 37343 )
 )
 )
Austin Garrett )
In his personal capacity )
Also in his official capacity )
% Hamilton County sheriff's office )
600 Market St. )
Chattanooga, Tenn. 37402 )
 )
 )
Hamilton County government )
Municipal corporation )
% Rheubin Taylor, county atty. )
625 Georgia Ave., Ste. 204 )
Chattanooga, Tenn., 37402 )
 )
 )
  *Defendants* )

Case no.

1:24-cv-368-TRM-SkL

**Trial by jury requested**

# Affidavit & complaint for false arrest, false imprisonment, demand for injunction

Comes now petitioner in his suit against parties who falsely arrest him on the public right of way in Chattanooga while exercising constitutionally protected federal rights of private ingress and egress to and from his family abode on protected press business, and

he swears to the following as true and complete, to the best of his knowledge and ability, under oath:

1. Petitioner is falsely arrested and falsely imprisoned by defendants without probable cause and without a warrant as required under T.C.A. § 40-7-103, with Brandon Bennett, pretending to act under authority of Tennessee code annotated as employee of Hamilton County government, admitting three times within the space of the first two minutes in a "traffic stop" that petitioner is not involved in commercial activity in his predawn use of the road for private purposes.

2. The pretext for the false imprisonment and false arrest is a missing piece of red plastic on a functioning taillight that Mr. Bennett alleges is a violation of the Tennessee "light law" under presumption that petitioner is acting on the privilege subject to the state law while Bennett admits petitioner is not involved in the privileged activity in commerce subject to that regulation.

3. The complaint names Austin Garrett, employed as sheriff of Hamilton County, who in his personal capacity apart from the immunities that attach to his office affects to operate a policy against petitioner of

   a. Arrest on sight ("general warrant" or "Redcoat warrants") forbidden by the U.S. constitution fourth amendment and Tenn. const. Art. 1, sect. 7, and;
   b. *Ultra vires* enforcement of the motor vehicle laws that in Tennessee are directed against privileged activity of hauling, carrying or transporting goods or passengers for hire, for private profit and gain affecting the public interest, pursuant to 49 U.S.C., transportation, and the code of federal regulations Title 49.

4. Mr. Garrett's policy of arrest on sight against private parties on the roads absent a crime is one that violates state and federal law, and offends complainant's rights to be free of false imprisonment and false arrest in the enjoyment of protected federal rights.

5. Mr. Garrett, who holds elected office, and Mr. Bennett, who holds office as deputy under terms of employment under defendant county, act as men apart from law and under coloration of law to injure complainant in his federal rights of movement, communication, ingress and egress. They do so maliciously, intentionally, knowingly and in bad faith, having been put on awares of limits to their authority by administrative notice created and served by plaintiff.

6. They serve the third defendant, Hamilton County, Tenn., a municipal corporation that is subject, in the time relevant to this suit, to state and federal laws requiring respect of due process rights of the citizenry, which county is liable for projecting corrupt, wicked, pernicious practice upon complainant and other men and women in like station who live in or visit Hamilton County.

7. Defendants, in enforcing privilege law in Tenn. Code Ann. §§ Titles 55 and 65 (chapter 15), motor and other vehicles and carriers, respectively, abrogate the uniform administrative procedures act ("UAPA") at Tenn. Code Ann. § 4-5-101 *et seq*, which law regulates accusations and controversies arising from the for-hire or commercial use of the public roadways, which body of law is civil in its operation, and not criminal, defendants pre-empting operation of that law in exercise of police powers and physical violence *ultra vires.*

8. The petition is for damages at law and also for injunctive relief in equity so that federal rights will in future be protected for petitioner's benefit and also for benefit

of all those in like station.

9. The injunctions proposed in the relief requested part of this complaint are for (1) a command that defendant county obey the federal 4th, 5th and 9th amendments and Tenn. const. Art. 1, sect. 9, warrants, and state law at T.C.A. § 40-7-103, which require a warrant for any crime or offense in the presence of the officer that is not a "public offense" or a "threatened breach of the peace," and, (2) an order that defendant county recognize state and federal constitutional and statutory limits and restrain employees Garrett and Bennett, in their county uniforms, from acting in personal capacity to injure petitioner again and members of the public by obstructing their free use of the roads in Tennessee if their activities are not under privilege, nor required to be.

10. This complaint demands they be required to obey the limits of Tenn. Code Ann. §§ Titles 55 and 65 if they have any such authority whatsoever under statute. Today, administration of said laws is promiscuously imposed upon all members of the traveling public as if all enjoyment of ingress and egress rights and other protected interests are privileged, or required to be enjoyed only under privilege of operating or driving a motor vehicle as carrier in the regulated occupation and vocation of driver/operator of a motor vehicle.

11. Defendants have a longstanding policy and practice of

> ➤ (1) interfering with interstate and intrastate commerce as well as obstruction of travel and commerce rights of private parties not subject to privilege, and do so on both counts with malice and bad faith, having been put under administrative notice by petitioner as to limits under law as creatures of the state and servants of the public welfare; also,

➤ (2) a custom and usage of general warrants, imposed in "traffic stops" and many other circumstances in Hamilton County, forbidden by longstanding and well-known law.

12. The fact that proper and timely legal administrative notice has had no effect in putting defendants on awares on Tennessee and federal law makes this petition significant in the sense of its being a defense of the public at large, and the rights and property of its members.

13. Defendants boldly reject the disabilities in the federally integrated motor vehicle law as to their police powers and regulatory authority, and with malice and bad faith have been heedless of the state and federal constitution guarantees allowing petitioner and others in like station to enjoy by free movement by automobile and unobstructed liberty exercise their God-given, constitutionally guaranteed unalienable and inherent rights as men and women to not be falsely imprisoned and arrested in use of the public way as if under a bill of attainder.

14. Petitioner asks for *temporary, immediate* injunction upon Hamilton County and Messrs. Garrett and Bennett in their persons to cease violating the well established law banning general warrants or its functional equivalent pending resolution of this case. He gives notice he intends to ask for *permanent* injunction upon Hamilton County to prohibit *ultra vires* enforcement of Tenn. Code Ann. §§ Titles 65 and 55 with respect to the right of private movement and communication and rights exercise the enjoyment of which defendants reject.

15. This suit demands an order and assignment of a federal master regulating defendant county and other municipal parties upon whom plaintiff intends to serve injunction, so that longstanding abrogation of the rights of the people of Tennessee cease.

16. Defendants Bennett and Garrett are sued in personal capacity as the wicked deeds of each in arresting complainant or organizing routines of false arrest in the department are outside of law and under coloration of law, they having stepped outside office as deputy and sheriff, respectively, injuring petitioner on their own personal authority and prejudice, arbitrarily and capriciously, for which harm they and their estates are liable personally. He sues Mr. Garrett as sheriff in official capacity; he does not sue defendant Bennett in his official capacity, because he is already under command in that capacity of state and federal law, and it would be redundant to sue him thusly.

# Jurisdiction

17. The court has jurisdiction to hear this case because of the deprived fundamental federal rights, privileges, or immunities involved.

18. The breach invokes the 1st amendment to the U.S. constitution applicable to the states and defendants, via the 14th amendment, grants to this court power and protections to plaintiff that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

19. The federal first amendment protects plaintiff from false imprisonment and false arrest in exercise of free speech and press rights. Seizure cancels plaintiff's 7 a.m. "Tulis Report" on Nov. 22, 2023, at NoogaRadio Network, with studios in Hixson.

20. An official without a warrant or probable cause, in making an arrest, violates the 4th amendment of the U.S. Constitution, whereby, "the right *of* the people to be

secure in their persons *** against unreasonable *** seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the *** persons or things to be seized."

21. A federal role exists in the carving out of North Carolina the state of Tennessee. The bill of rights at Tenn. art. 1, sect. 31, states "that all the territory, lands and waters lying west of said line, as before mentioned, and contained within the chartered limits of the state of North Carolina, are within the boundaries and limits of this state, over which the people have the right of exercising sovereignty, and **the right of soil,** so far as is **consistent with the Constitution of the United States, recognizing the Articles of Confederation, the Bill of Rights** and Constitution of North Carolina, the cession act of the said State, and the ordinance of Congress for the government of the territory north west of Ohio; Provided, nothing herein contained shall extend to affect the claim or claims of individuals to any part of the soil which is recognized to them by the aforesaid cession act" (emphasis added).

22. The privileges and immunities giving the court jurisdiction are a grant of congress, a domestic treaty with plaintiff, a disposal to plaintiff as an assignee forever of appurtenant ingress-egress rights, as well as the right of movement generally. Defendants' commerce regulation practices cannot lawfully encroach on federally recognized granted rights to and exercised by plaintiff through congressional soil disposal to and exclusively possessed, and enjoyed by him. By the congressional land grant evidenced in the land patent, the court, being the trustee for the acts of government, is to protect it, above and apart from municipal legislation. The losses are not just an unwarrantable abrogation of right in the right to freely come and go, of ingress and egress on the public road, but theft of plaintiff's exclusive possession, use, and enjoyment of the property. County and state in Tennessee impermissibly encroach on property and rights that fulfilled federal grant law acts

exclusively disposed to plaintiff, as an assignee, and the court has authority and is duty bound to protect these exclusively disposed property and appurtenant rights, such as ingress and egress against encroachment and consistent with the state enabling act congress approved regarding its exclusive power to disposal of the soil.

23. The ninth amendment to the constitution prohibits a government actor from a state, county or city from abrogating enjoyment of any right not enumerated in the bill of rights. "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." The right of ingress and egress from his soil disposal in Hamilton County in use of state route 153 subject to the jurisdiction of and maintained by a public authority and "held open to public travel" pursuant to 23 U.S.C.A. § 402 is one in particular invoking the court's jurisdiction. [1]

24. 42 U.S.C. § 1983 protects plaintiff against state actor abuse of petitioner's federal constitutional guarantees, whereby "[e]very person who, under color of any *** custom, or usage, of any State *** , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

---

[1]

**(23) Public road. –** The term "public road" means any road or street under the jurisdiction of and maintained by a public authority and open to public travel.

23 U.S.C.A. § 101

**Motor vehicle. –** The term "motor vehicle" means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo.

18 U.S.C.A. § 31 Chapter 2. Aircraft and Motor Vehicles

and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

25. U.S.C. 49, transportation, is the federal law incorporated by Tennessee to be part of the unified carrier registration system of the United States department of transportation, in accordance with 49 U.S.C. § 13908. The Tennessee department of safety and homeland security ("DOSHS") affirms semiannually that state law and practice confirms exactly with federal law, with the Tennessee highway patrol the exclusive regulator of motor vehicles. [2]

26. The sheriff's department run by Hamilton County is not part of this administration under federal motor carrier law.

---

[2] The DOSHS commissioner signs a semiannual covenant with the U.S. department of transportation for fiscal years 2022-2024 to receive federal funding. The document is "TENNESSEE Commercial Vehicle Safety Plan Federal Motor Carrier Safety Administration's Motor Carrier Safety Assistance Program Fiscal Years 2022 - 2024" ("TCVSP").

The commissioner states on p. 4 – "The Tennessee Highway Patrol of the Tennessee Department of Safety and Homeland Security (TDOSHS) is the **sole agency** in the State of Tennessee responsible for enforcing laws related to size, weight, and safety regulations for commercial motor vehicles. The Tennessee Highway Patrol is the State's lead agency for the Motor Carrier Safety Assistance Program and does not fund any sub-grantees" (emphasis added).

TCVSP p. 7: "The State of Tennessee, Highway Patrol executes the following activities to meet the requirements of 49 CFR part 350.213(b): *** Enforcing federal registration (operating authority) requirements under 49 U.S.C. 13902, 49 CFR Part 365, 49 CFR Part 368, and 49 CFR 392.9a by prohibiting the operation of (i.e., placing **out of service**) any vehicle discovered to be operating without the **required operating authority** or beyond the scope of the motor carrier's operating authority" (emphasis added).

On July 8, 2021, Commissioner Jeff Long signs stating that he "[certifies] that the State has conducted the annual review required by 49 C.F.R. section 350.303 of its laws, regulations, standards, and orders on commercial motor vehicle (CMV) safety and that the State's safety laws, regulations, standards, and orders on CMV safety **are compatible with the Federal Motor Carrier Safety Regulations** (49 C.F.R. parts 390, 391, 392, 393, 395, 396, and 397)," with state law and practice "have the same effect" or are "more stringent" than federal rules. The approval date is Aug. 10, 2022.

https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/2022-11/FY2022%20Tennessee%20eCVSP_Final.pdf

27. Plaintiff invokes the court's authority to deal with the common law harm of false imprisonment and false arrest under color of federal motor vehicle and transportation regulation and law.

28. This combined action for at-law damages and equitable forward-looking and injunctive relief for continuing irreparable harms is a "petition to the [g]overnment for redress of grievances" under the first amendment.

29. The value of the relief exceeds $75,000.

## Parties

30. Complainant is a radio journalist reporting at the time of the tort alleged at NoogaRadio Radio Network (96.9 FM) in Chattanooga and living in a house in Hamilton County. He exercises protected 1st amendment press rights, and pursues a private vocation under Tenn. const. art. I, sect. 19. He sues in his proper person, *sui juris*.

31. Mr. Bennett is sued as a man in his person for acts that take place in Hamilton County in the Tennessee eastern Tennessee district of the U.S. district court. He is believed to live in Hamilton County and is served at his place of employment at HCSO patrol services, 6233 Dayton Blvd., Chattanooga, Tenn., 37343.

32. Likewise, Mr. Garrett is sued as a man in his person for acts in Hamilton County in the Tennessee eastern Tennessee district of the U.S. district court. He is also sued in official capacity as sheriff. Mr. Garrett is believed to live in Hamilton

County, and is served at his place of employment at Hamilton County sheriff's office, 600 Market St., Chattanooga, Tenn. 37402

33. Hamilton County is a government entity obligated to obey state and federal law in its service to the public and protection of the health, safety and welfare of its members and of its residents and others within its jurisdiction. It oversees the Hamilton County sheriff's office ("HCSO") that receives its funding from the county. It is served at the offices of its attorney, Rheubin Taylor, 625 Georgia Ave., Ste. 204, Chattanooga, Tenn., 37402l.

# Introduction

34. This lawsuit exposes a longstanding program in Hamilton County to abuse members of the public arrested without a warrant when a warrant is required, men and women arrested in furtherance of a second mass harm. That second abuse is that of "traffic enforcement" in criminal jurisdiction, which practice has become effectively a bill of attainder.

35. The attainder operates by coercive commercialization of all automobile use under a rebuttable presumption, under an apparent legal fiction that all use of the road by private parties is commercial, that no use of the people's roads exists apart from state privilege exercise, and that all private use by plaintiff and others in like station is criminal, deserving arrest, seizure of vehicle and criminal prosecution without probable cause.

36. Petitioner's alleged breach of use of the road rules by having a damaged taillight is a matter subject to administrative claims by the aggrieved state of Tennessee, the agent of which (presumably, or by presumptive arrogation) is Mr. Bennett in role

of deputy, an agent of defendant Garrett. By long custom, defendants imprison, arrest and seize plaintiff and distrain his property in a criminal matter.

37. One legal authority, Marcus Dirk Dubber, author of *The Police Power; Patriarchy and the Foundations of American Government* (New York: Columbia University Press, 2005), describes this criminalization and overreach by local authority into state jurisdiction and as poaching.

38. The criminal matter proceeds in breach of the warrant requirement. A blinkered taillight and operation of a motor vehicle under a license are under T.C.A. § Title 55, motor and other vehicles, (specifically chapter 50, the Uniform Classified and Commercial Driver License Act of 1988), all actions by state of Tennessee subject to UAPA at T.C.A. § Title 4-5-101 *et seq*, and subject to accused's right in defense to force state claim movants to exhaust their administrative remedies prior to seeking redress in criminal court.

39. Plaintiff in his pending demand for injunctive relief against *ultra vires* use of the motor vehicle law details the limitations in the law, and recognition in the law itself of the great liberties afforded under the Tennessee and U.S. constitutions.

## Fact narrative of false imprisonment, false arrest

40. On Nov. 22, 2023, at 6:26 a.m., Mr. Bennett of Hamilton County sheriff's office chases accused southbound on state route 153, running his blue lights. He arrests accused in a retail parking lot opposite the Hixson Wal-Mart store for "a broken passenger taillight in which white light could be seen."

41. Mr. Bennett in "incident narrative" and affidavit of complaint describes the seizure as a "traffic stop" for a "passenger taillight" of a "vehicle" being "[operated]" by a

"driver and violator." [3]

42. "I explained [to] Tulis he must be in compliance with Tennessee Law while operating a vehicle on public roadways. I then asked for Mr. Tulis' driver's license which he refused to produce. Mr. Tulis stated he did have a license, but did not want to give it to me. I advised *** I needed his license to identify him as the driver and violator. Mr. Tulis again refused so *** I asked him to step out of the vehicle, which he did," according to the affidavit of complaint.

43. "What makes you believe right now that I'm traveling right now in commerce?" plaintiff, still behind the steering wheel, asks Mr. Bennett,

44. BENNETT "Well, I observed you on the motor way and *** I do believe you to be the person operating this vehicle as of right now."

45. TULIS "I rebut the presumption, sir, I'm operating a vehicle. Right now, I would rebut the claim that I am driving and operating a motor vehicle. Is it not possibly prudent for you to determine whether or not I'm involved in the activity under the privilege right now? That would be under [Title] 55, chapter 50, and also under [Title] 65 under the Tennessee code annotated, which is 'carriers.'"

46. BENNETT "You're not. I'd say you're not. You're not. If I take this before a judge he'll also state that. Yes, you are in violation of a traffic law under section 55

---

[3] 18 U.S.C. § 31. Definitions (6) Motor vehicle.- "The term '**motor vehicle**' means every description of carriage or other contrivance propelled or drawn by mechanical power **and used for commercial purposes on the highways** in the **transportation** of passengers, passengers and property, or property or cargo.***

(10) Used for **commercial purposes**.-The term 'used for commercial purposes' means the carriage of persons or property **for any fare, fee, rate, charge or other consideration**, or directly or indirectly in connection with any business, or other undertaking **intended for profit**." (emphasis added)

of—"

47. TULIS "The light law?"

48. BENNETT "— Yes."

49. TULIS "— Yes, well. I rebut the presumption, officer ***. "

50. Audio/video record shows Mr. Bennett stating three times that his accused is <u>not acting in commerce</u>.

51. Mr. Bennett, under color of office, orders accused from his car and binds his wrists, arresting and imprisoning him. Mr. Bennett takes accused to Hamilton County detention center, aka Silverdale, whereupon in name of State of Tennessee plaintiff is criminally charged and booked.

52. Defendants, in the name of state of Tennessee, charge plaintiff with failure to exhibit a driver license.

> Every licensee shall have the licensee's license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality ***.

T.C.A. § 55-50-351

53. Plaintiff also is charged criminally with having a damaged taillight, "Each lamp and stoplight required in this section shall be in good condition and operational" Tenn. Code Ann. § 55-9-402. The alleged offenses are Class C misdemeanors subject to prosecution by parties with authority under the title.

54. In Tennessee law, misdemeanors that are not public offenses require an arrest warrant. "(a) An officer may, without a warrant, arrest a person: (1) For a public offense committed or a breach of the peace threatened in the officer's presence;" T.C.A. § 40-7-103. The arrest is without warrant as required as the alleged breach of the light law, T.C.A. § 55-9-402, not meeting the standard for public offense.

55. Blake Murchison, Hamilton County magistrate at the jail, holds a hearing from behind a window. He denies the accused a copy of the charging instrument. He denies him a view of his computer screen showing such charging instrument, which device apparently cannot be turned to display to the accused the writing of accusation. He denies the accused the right to confront the witness and accuser, the county employee deputy Brandon Bennett, to provide a judicial basis for probable cause.

56. State of Tennessee's accused demands dismissal of the case for lack of subject matter jurisdiction and the failure to obtain a warrant under Tenn. Code Ann. § 40-7-103. The magistrate states he finds probable cause for the arrest, and releases accused on his own recognizance, setting a hearing date in Hamilton County sessions court.

57. Complainant at a Jan. 18, 2024, hearing before Judge Christie M. Sell demands she dismiss the case ministerially, as the court has no subject matter jurisdiction to hear it. The court is in receipt of the accused's Pre-plea remedy and avoidance showing that the UAPA applies to all matters pertaining to granting and revocation of a state license, and matters in between. Before a silent assistant district attorney, complainant says the case State of Tennessee v. David Jonathan Tulis is unripe for criminal proceedings, as matters pertaining to driver licenses are subject to UAPA and are administrative in nature under contested case procedure. Accused insists

on his right that movant state exhaust its administrative remedies.

58. Judge Sell refuses to dismiss. The court says it will set another hearing date with the officer present. Accused objects to setting calendar for any hearing. Accused demands indictment, inking waivers of the court to obtain grand jury review of his arrest as no probable cause is determined.

59. The district attorney's office forwards him an e-mail indicating that the case is being dropped. Hamilton County criminal court judge Amanda Dunn signs an expungement order March 28, 2024.

# Bad faith origins of traffic attainder, warrantless arrest regimes

60. **SUMMARY.** Defendants operate general warrants scheme, injuring plaintiff and other people in like station, and secondarily administer as poachers the state and federal motor vehicle laws in abusive and harmful custom against which plaintiff put the defendants under administrative notice as to transportation March 1, 2018, and as to warrantless arrest April 15, 2020, with parties persisting in two sets of illegal activity resulting in the false imprisonment and false arrest for which plaintiff seeks redress and reformation by order of injunction of defendants' practices and policy.

61. The criminal prosecution arises from Hamilton County sheriff's office colorable administration of Tenn. Code Ann. §§ Titles 65, carriers, and 55, motor and other vehicles. Tenn. Code Ann. § Title 55 regulates the privileged field of economic activity called transportation. The privilege is the trade, business, calling or taxable vocation styled "operating" or "driving" a "motor vehicle," for which

authority is state of Tennessee through the exercise of a state privilege via, among other laws, the Uniform Classified ***and*** Commercial Driver License Act of 1988, regulating transportation on Tennessee roads under state privilege (emphasis added).

62. Every driver license is commercial, starting with the Class D for vehicles up to 13 tons. Chapter 50's original title is "Uniform Motor Vehicle Operators' and Chauffers' Licenses Law." "The registration and the fees provided for registration shall constitute a privilege tax upon the operation of motor vehicles " Tenn. Code Ann. § 55-4-101(2).

63. Driver licenses are equitable matters. "The driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare. *** [T]he court, considering the suit to be of an equitable nature, took jurisdiction to hear and determine the case upon the principles of equity under the authority of section 10329 of the Code" Sullins v. Butler, 175 Tenn. 468, 135 S.W.2d 930, 932, 933 (1940).

64. In Tennessee, controverted acts under licenses are administrative in nature. "[T]he grant or refusal of a license to use public highways in commerce is purely an administrative question." McMinnville Freight Line, Inc. v. Atkins, 514 S.W.2d 725, 726–27 (Tenn. 1974). [4]

---

[4] All matters pertaining to driver licenses and licensed activity are purely administrative, however, and a claim upon a license follows the rule of exhaustion of administrative remedies. "[T]he Utilities Commission has never been held by this Court to be restricted by the technical common law rules of evidence in determining purely administrative questions, and we have held that the grant or refusal of a license to use public highways in commerce is **purely an administrative question**." *Hoover Motor Exp. Co. v. R.R. & Pub. Utilities Comm'n*, 195 Tenn. 593, 616, 261 S.W.2d 233, 243 (1953).(emphasis added)

65. In general sessions accused demands his right to have the dispute over a license be heard first by State of Tennessee under auspices of its department of safety and homeland security, responsible for issuing the license upon which claim was made, the county sessions court not yet qualified by ripeness of the allegations to determine if State of Tennessee has authority make a claim for which relief was to have been granted as a criminal matter.

66. A taillight defect does not meet the test for a public offense in the nature of a breach of the peace, allowing for arrest without warrant under Tenn. Code Ann. § 40-7-103.

67. Defendants' act of false imprisonment and false arrest exposes improper customs and usages of defendant county, which defendants Garrett and Bennett pursue in their personal capacities, as their sequences of action to injure plaintiff are outside of the law.

68. Defendants run a *general warrants scheme*, prohibited in Tenn. const. Art. 1, Sect. 7. "That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that **general warrants,** whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to **seize any person** or persons not named, whose offences are not particularly described and supported by evidence, are **dangerous to liberty and ought not be granted**" (emphasis added). The Nov. 22, 2023, arrest is a breach at Tenn. Code Ann. § 40-7-103, the state warrant exceptions law limiting Tenn. const. Art. 1, sect. 7, protections.

69. Plaintiff files a criminal complaint against defendants Bennett and Garrett with the Hamilton County district attorney Dec. 4, 2023, for which no action is taken by that office.

# Aggravating circumstances
# basis for punitive damages, demand for injunctive relief

70. Plaintiff is long concerned as a God-fearing Christian and radio investigative journalist and about abuses against the people, especially minorities and the poor, and their constitutionally guaranteed rights by defendant county and defendant sheriff's office. He takes steps March 1, 2018, and April 15, 2020, and other dates 2020, to apprise Hamilton County of law prohibiting the two strands of illegal conduct exemplified in this case.

71. Plaintiff does so by putting defendant county and Messers. Garrett and Bennett, by imputation, on administrative notice about the law pertaining to arrest and to the law regarding privilege in Tennessee, as privilege is managed by the carrier and motor vehicle laws and in no way implicate, derogate or abrogate the right to travel.

72. He goes further. As broadcast journalist on FM radio, NoogaRadio Network and later Copperhead and Eagle Radio Network, and as publisher of law blogs TNtrafficticket.us and DavidTulis.substack.com, focusing on Tennessee privilege law and rejection of it by defendants, plaintiff has put defendants under notorious publication about the rights of the people and the constraints of state and federal constitutions and law upon their police power or administrative authority. He has done so the past 2,455 days (since March 1, 2018),

73. Identification of plaintiff's harms is aided by criminal statutes defendants violate to affect their continuing and irreparable harms upon plaintiff, namely:

74. **Official misconduct** – Official misconduct is a misdemeanor.

(a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:

(1) Commits an act relating to the public servant's office or employment that constitutes an unauthorized exercise of official power;

(2) Commits an act under color of office or employment that exceeds the public servant's official power;

(3) Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment;

(4) Violates a law relating to the public servant's office or employment

Tenn. Code Ann. § 39-16-402

75. **Official oppression** – Defendants act under color of law, in arbitrary and capricious policy to arrest plaintiff. The essential elements of official oppression, a class E felony, are as follows: "(a) A public servant acting under color of office or employment commits an offense who: (1) Intentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search, seizure, dispossession, assessment or lien when the public servant knows the conduct is unlawful; or (2) Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful." T.C.A. § 39-16-403. Official oppression.

76. Defendants imprison and arrest plaintiff without probable cause, and without a warrant as required for an offense that is not a public offense under T.C.A. § 40-7-103, and they do so pretendedly under Tenn. Code Ann. § Title 55, the motor vehicle law, which obligates them to sue accused civilly, administratively under the UAPA for alleged breaches under a driver's license, and not to falsely imprison and arrest him for a damaged taillight traveling privately as if he were a criminal.

### *Notice No. 1 arrest powers*

77. *Administrative notice on limits of arrest power in Tennessee under 'public offense' rule*. This notice is served on Hamilton County commission on April 15, 2020 and on the Hamilton County sheriff's office in correspondence with Coty Wamp, counsel, now state district attorney. The notice indicates the Tenn. const. Art 1, sect. 7 ban on warrantless arrest has exceptions at T.C.A. § 40-7-103, which limits defendants maliciously ignore. **EXHIBIT No. 1**

78. The exceptions law gives law enforcement officers an inch, disallows them from taking a mile.

> (a) An officer may, without a warrant, arrest a person:
>    1. (1) For a **public offense** committed or a **breach of the peace threatened** in the officer's presence \*\*\* [Emphasis added]

   T.C.A. § 40-7-103

79. Deputy Bennett has to conduct two tests to determine if authorized to make a warrantless arrest of an alleged misdemeanor. One is "the officer's presence." The other is whether it is a "public offense committed." The law itself defines a "public offense" as in the nature of a "breach of the peace threatened." Plaintiff's administrative notice lays out the jurisprudence indicating how a "public offense" is in the nature of a breach of the peace.

> "'A breach of the peace is "a violation of public order, the offense of disturbing the public peace. An act of public indecorum is also a breach of the peace."' Galvin v. State, 6 Cold. 294. The sale of intoxicating liquors has always been recognized as tending to provoke disturbances of good order and breaches of the peace. When

such sales were lawful it was found necessary to impose upon them strict regulations to prevent breaches of the peace. Speaking of such a regulation this court long ago said: 'This is a police regulation, for the good order and quiet of the city.' Smith v. Knoxville, 3 Head. 247." State ex rel. Thompson

The State ex rel. Thompson court goes for social color to a list of public offenses. "The term, 'breach of the peace' is generic, and includes riotous and unlawful assemblies, riots, forcible entry and detainer, the sending of challenges and provoking to fight, going around in public, without lawful occasion, in such manner as to alarm the public, the wanton discharge of firearms in the public streets, engaging in an affray or assault, using profane, indecent, and abusive language by one toward another, on a street and in the presence of others, or being intoxicated and yelling on the public streets in such manner as to disturb the good order and tranquillity of the neighborhood." 8 Ruling Case Law, p. 285.

From State ex rel Thompson 135 Tenn. 653, *669; 188 S.W. 225, **229; 1916 Tenn. LEXIS 46, ***17

Administrative notice on "public offense" rule, p. 4

80. Defendants Garrett and Hamilton County correctly quote § 40-7-103 in sect. 205, warrants and warrantless arrest in the HCSO manual.

81. In practice defendants convert "public offense" to "offense" to avoid having to see and obey the restraints in law, and impose custom upon the deputy that he imprison and arrest plaintiff arrest on his own personal authority, without warrant or probable cause.

82. They eliminate one of the two tests a deputy must make before making an arrest without a neutral judge's approval of deputy's draft of the arrest warrant. Such act voids the law enumerating the exceptions and creates the county's Redcoat warrants scheme.

83. If the public offense standard is deleted, the statute is altered to say an officer can arrest anyone for a misdemeanor at any time without a warrant for cause. If public offense is translated into offense, no law of exceptions would be needed whatsoever if a warrant is not needed for misdemeanors of the kind alleged by defendants. Defendants claim to have authority to affect an arrest on the spot by the present officer any time for any offense.

### *Notice No. 2 Transportation law limits*

84. *Tennessee transportation administrative notice*. The notice is served personally on then-Sheriff Jim Hammond by plaintiff March 1, 2018, and also by notorious publication. The document is in the county record of Rhea County register of deeds, and published in Hamilton County by the Chattanooga Times Free Press legal classified ad. **EXHIBIT No. 2**

85. The administrative notice outlines the nature of transportation regulation and spotlights the line separating regulatory authority over one sector of the traveling public from that other sector of the traveling public upon which no authority is exercisable except for cause or under criminal warrant. Half of the recorded public document describes state and federal regulatory authority; the second half of Tennessee transportation administrative notice describes rights retained by the people. The state exercises authority up to clear limit. The people enjoy rights as against such police or tax powers. These rights include movement, locomotion, rights of ingress-egress from their soil disposal, moving from Point A to Point B, communication, self-propulsion, travel, pleasure and comfort, motoring, and others albeit unenumerated, protected by the federal 9th amendment.

86. Tennessee has two modes of taxation: *Ad valorem* and privilege. Tenn. const. Art. 2, sect. 28. Privileges are on occupations, callings and trades, upon for-profit

activities that affect the public interest. Operating a motor vehicle is an occupation and trade, and use of automobiles is regulable when the movement of the automobile or conveyance down the public right of way is for private profit and gain, carrying goods or people for hire, affecting the public health, safety and welfare interest and subject to police power, regulation, taxation and surveillance.

87. Statutes and court cases separate the two sectors of travel as described in the leading court case on privilege in Tennessee, Phillips v. Lewis, 3 Shannon's cases 230, 1877. See Appendix. A crucial point in the instant controversy is whether defendants have authority to administer the privilege of transportation absent any criminal warrant or administrative cause arising within defendants' established peacekeeping or conservator of the peace role.

88. County traffic arrests like that highlighted in this case arise under color of state of Tennessee's commercial regulation of the driving and operating a motor vehicle privilege.

89. Police power and regulatory authority under the Tennessee UAPA, Tenn. Code Ann. 4-5-101 *et seq*, are exercisable upon those "on the privilege" of driving or operating a motor vehicle. Phillips describes a privilege as an occupation, trade or calling such as the raising of bitches or jackasses for private profit and gain.

> This pursuit or occupation is taxed, not as property, but as an occupation. Another element in this occupation is, that its object and pursuit is directed to a profit to be made off the general public, the merchant having a relation, by reason of his occupation, to the whole community in which he may do business, by reason of which he reaps, or is assumed to reap, the larger profit by drawing upon or getting the benefit of the resources of those surrounding him. The same idea is involved in the case of the peddler, who may range over a whole county by virtue of his license. His is an occupation of

like character, a peculiar use of his capital varied only in some of its incidents.

*Id.* <u>Phillips</u> at 240

90. Insofar as administering the driving and operation of motor vehicle privilege, per §§ Titles 55 and 65, his role is minimal.

91. A primary duty is keeping the peace. "(a) The sheriff and the sheriff's deputies are conservators of the peace, and it is the sheriff's duty to suppress all affrays, riots, routs, unlawful assemblies, insurrections, or other breaches of the peace, detect and prevent crime, arrest any person lawfully, execute process of law, and patrol the roads of the county. (b) The sheriff shall furnish the necessary deputies to carry out the duties set forth in subsection (a), and, if necessary, may summon to the sheriff's aid as many of the inhabitants of the county as the sheriff thinks proper." Tenn. Code Ann. § 8-8-213. Powers as conservator of the peace.

92. The sheriff's authority list is T.C.A. § 8-9-201. He has duty to "execute and return, according to law, the process and orders of the courts," "attend upon the courts" by keeping them "in order" and "[furnishing] them with fire and water," "possess and exercise police powers to the same extent as *** police," run the jail, "execute all writs and other process *** and make due return thereof."

93. In No. 36 of his list of duties, is a list of other statutes that are part of his job description, including three in § Title 55. He "shall perform the duties set forth in" § 55-10-402 (jailings of DUI offenders), § 55-10-410 (probation conditions), § 55-10-420 (compliance-based ignition interlock services; provider licenses).

94. At § Tenn. Code Ann. § 8-8-201, duties, he enjoys the common law arrest authority to make arrests, shared by all citizens, for felonies and public offenses.

95. Tennessee law regulating the privilege of driving and operating a motor vehicle under Tenn. Code Ann. §§ Titles 65 and 55 is pursuant to 49 U.S.C. Transportation.

96. "[T]he HCSO [Hamilton County sheriff's office] does not possess any records related to contracts, agreements, arrangements, delegation orders, or grants of authority between the HCSO and the **U.S. Department of Transportation, Tennessee Department of Transportation, Tennessee Department of Revenue,** nor the **Tennessee Department of Safety,**" the department says Oct. 30, 2024, via general counsel Brian Bush (bold in original).

97. No Tennessee statute gives authority for Hamilton County nor its employees to administer freight motor vehicle laws unless a motor vehicle or automobile is being used for commission of a crime, public offense or breach of the peace threatened.

98. On Nov. 22, 2023, the date defendants launch a criminal case against plaintiff, the moving parties fall under the two bodies of law about which they have been put on administrative notice, said notice warning them not expose themselves legally by tortious conduct and to not injure plaintiff in his God-given, constitutionally protected, inherent and unalienable federal rights.

99. Defendants in seizing plaintiff's person obtain no evidence of commerce on part of their accused, declaim any desire to obtain such evidence, fail to establish that moment of seizure the essential elements of "driving a motor vehicle" that is an activity under privilege subject to the Tennessee highway patrol. T.C.A. §

4-3-2012, § 4-7-104, § 4-7-105 ("jurisdiction and authority [over] operators of motor vehicles for hire"), and § 40-7-103(c) ("Unless a law enforcement officer has probable cause to believe that an offense has been committed, no officer, except members of the Tennessee highway patrol acting pursuant to § 4-7-104, shall have the authority to stop a motor vehicle for the sole purpose of examining or checking the license of the driver of the vehicle").

100.  The scheme to deny exercise of ingress-egress rights, from congressional disposal of soil in Tennessee, belonging to plaintiff in enjoyment of his place in Hamilton County, advances the cause of defendants' unconstitutional and notorious bill of attainder in Hamilton County in which all communication by automobile is **commercialized _presumptively_**, put presumptively under Title 55 privilege, and sheriff's deputies impose police power on pretendly public commercial parties without warrant, probable cause or nonfraudulent exigency, creating **criminal cases from what are administrative allegations of equitable nature.**

101.  Defendants' arbitrary and capricious claims are made against plaintiff and against all similar parties who are nontrucking, non-shipping, non-commercial *private* travelers exercising callings and enjoying rights, as was plaintiff on the day of his false imprisonment and false arrest, outside the scope of the motor vehicle law at §§ Tenn. Code Ann. Titles 55, motor and other vehicles, and 65, carriers.

102.  Insofar as plaintiff has a tag and a driver license, registering his car with department of revenue for privileged use under Title 55 and his person as a driver/operator with DOSHS, he is commerce ready.

103.  He is "on" the license when doing the for-profit activity for which the privilege exists, carrying goods or passengers for hire in an automobile used as a motor

vehicle. That one is "on" or "off" license is reasonable. Duty under privilege occurs not when a fisherman is eating breakfast at a wharf diner or trolling a shoreline, but once he flings hook and bobber upon the lake. A restaurateur is not "on" her license cooking burgers at home for a son's birthday party. A pilot is not "on" license traveling by car from the airport. A podiatrist is not "on" his license looking at the foot of his neighbor's son. Liability for privilege proof exhibit on demand occurs when the licensee performs the act or acts under privilege.

104.   In defendants' criminal disregard of (1) arrest warrant requirements and (2) protected rights of free movement or private activity by automobile or car, defendants separately and personally under color of office breach plaintiff's absolute right to be free from false imprisonment and false arrest in the exercise of his constitutionally protected, God-given, unalienable and inherent rights of ingress and egress.

105.   Their acts are not accidental. They are part of a pattern, are knowing and deliberate, and done in personal capacity outside of the law, to the injury of plaintiff. Their acts expose their persons and their municipal employer to claims for redress and relief.

106.   Their ignoring administrative notice drafted and served in the public interest shows malice and bad faith. Hamilton County, Messrs. Garrett and Bennett run a "deputy-can-arrest-anyone-for–cause-at-anytime-without-a-warrant-if-it's-in-the-o fficer's-presence" scheme, aka general warrants, "arrest on sight" powers, aka *Redcoat warrants*. Mr. Bennett's putting his hands on plaintiff and dragging him from cruiser to the jail door steps is materially no different than if Deputy Bennett had a blank arrest warrant in his pocket and fills it in with accused's name on a crime scene, i.e., *general warrant*. General warrants are outlawed in the United States.

# Itemization of harms to plaintiff

## Count 1 - False imprisonment

107.   This count incorporates by reference all the facts and allegations from paragraphs 1 to 106.

108.   Plaintiff is falsely imprisoned by defendants in his Nov. 22, 2023, arrest, forced to go where he does not wish to go and prohibited from going to that place where he wishes to go. The imprisonment is apart from lawful authority, and is done with the use of armed threat and a pretense of the lawful use of police authority, a harmful and oppressive act, and an injury to plaintiff.

109.   In falsely imprisoning plaintiff, Mr. Bennett acts against plaintiff in his personal capacity, outside his office, without warrant, and in a personal gesture effectively kidnaps plaintiff for no lawful reason and not in defense of any of Mr. Bennett's personal rights or property, and does so knowingly and intentionally, if not by personal knowledge, then by legal imputation of administrative notice upon his principals and superiors, of whom he is agent, as to the requirements of a warrant under T.C.A. § 40-7-103 and Tenn. const. Art. 1, sect. 7, and the federal constitution 4th amendment.

110.   Mr. Bennett, in making the arrest, denies himself the protection that the arrest warrant system at T.C.A. § 40-6-203. Informants; examination creates, whereby the arrest is judicially sanctioned ahead of time by the county magistrate, and the deputy in his person is immune if the proposed seizure is in error.

111. Mr. Bennett, pursuant to T.C.A. § 8-8-301, liability for wrongs of deputies – limitation, "shall be liable" for wrongs done plaintiff, though agent of co-defendant Garrett and co-defendant county, the wrongs done in personal capacity.

112. Mr. Bennett falsely imprisons plaintiff under color of office despite having been put under notice, actual or putative, about the disabilities of the motor vehicle laws and the constitutional protections of the traveling public; he does so under presumption of commerce that petitioner rebuts on the scene of arrest, which presumption leads defendant to act as though all use of the road is commercial, and that the alleged taillight infraction is under his authority, and is an arrestable crime, a crime of such nature as a "public offense" as to not need an arrest warrant.

113. Mr. Bennett falsely imprisons plaintiff without a warrant in plaintiff's exercise of federally protected ingress-egress property rights and liberty, and or plaintiff's refusal to yield to a baseless demand to exhibit a driver license, to which demand plaintiff is under no obligation to yield, as he is moving up the roadway on private business, not having committed any crime, and unwilling to yield — by the showing of such driver license, issued under T.CA. § 55-50-101 *et seq* — and place himself and his property at that hour into state and federal commercial privilege jurisdiction, the state of Tennessee refusing to prosecute defendant Bennett's arbitrary allegations against plaintiff otherwise subject to the Tennessee uniform administrative procedures act and plaintiff's right to face allegations regarding a driver license in a contested case at T.C.A. § 4-5-301, Conduct of contested cases.

114. That Mr. Bennett imposes false imprisonment despite notice about arrest warrants and ingress-egress automobility protected rights of plaintiff, which

exercise is not a crime. These acts, in county-issued sheriff's department uniform and vehicle, and under color of defendant county's policies and orders, constitute an aggravating harm deserving extraordinary restitution and punishment.

115.  In permitting imprisonment of plaintiff in the ordinary course of running the sheriff's office, Mr. Garrett, having been put under administrative notice regarding T.C.A. § 40-7-103 and the limits of T.C.A. §§ Titles 55 and 65, knowingly and intentionally, and recklessly, allows or commands his employee Mr. Bennett to follow departmental policy, custom and training, giving Mr. Bennett pretended "authority" to affect plaintiff's imprisonment, to plaintiff's injury.

116.  Whether by actual knowledge or by imputed knowledge per administrative notice on warrantless arrest authority in 2020, Mr. Garrett is personally liable to plaintiff for the harm done him in false imprisonment and a criminal prosecution initiated by his office and rejected by state of Tennessee district attorney as baseless.

117.  Mr. Garrett is in his office as sheriff also liable to plaintiff for refusing to countenance black-letter law — in the constitution and in the statute — and limit the use of imprisonment authority pursuant to law.

118.  In permitting imprisonment of plaintiff by its two employees, Hamilton County allows or encourages such acts, and does so with malice and bad faith, having been put under administrative notice about the requirements of T.C.A. § 40-7-103, and yet taking no steps to restrain the private acts of these men under color of law and under color of Hamilton County authority.

119.  Defendant county makes routine and commonplace misuse of the motor vehicle laws its standard operating procedure. It criminalizes with false

imprisonment private communication by automobile and taillight damage when technical defects, if they occur under any authority it may lawfully administer, are at best subject to verbal warning or as administrative matters handled by notice, letter or a contested case in DOSHS, or in a county office, if such arrangements have been made with state of Tennessee for such agency.

120.  Hamilton County acts against plaintiff as if communicating by automobile, not under privilege, and not in commerce at the hour in question, were a crime

# Count 2 - False arrest

121.  This count incorporates by reference all the facts and allegations from paragraphs 1 to 120.

122.  On Nov. 22, 2023, defendants arrest plaintiff. Mr. Bennett, under color of employment serving the county and under color of office, binds plaintiff by wristcuffs and takes him to jail for booking against his will and despite protest. Stating his refusal to cooperate with false imprisonment and false arrest, plaintiff forces deputies to carry him from cruiser up the concrete steps to the jail booking door. Plaintiff is denied the right to know the cause and nature of his arrest and denied his right to confront his accuser and witness. Plaintiff demands of Bennett that he stay to be confronted, but Bennett answers that everything he has to say is in his charging instrument. Blake Murchison, county magistrate and county employee, does not give the prisoner a copy of the charging instrument, does not show him the words on the document by twisting his computer monitor to make the document available for his reading, and does not compel defendant Bennett to come back to the jail so plaintiff can confront him as to nature and cause of his accusation under oath, does not dismiss Mr. Bennett's two criminal charges on due

process grounds, all of which constitute harms of false arrest.

123. Defendants premise their false arrest on authority in T.C.A. §§ Title 55, motor and other vehicles, and 65, chapter 15, carriers, which pretended exercise of authority is *ultra vires* and injuriously and illicitly applied upon plaintiff, of which misuse plaintiff argues before the magistrate to no avail — all such wrongs piece and parcel of false arrest.

124. In falsely arresting plaintiff, Mr. Bennett acts against plaintiff in his personal capacity, outside his office as deputy, without warrant, and in a personal gesture by which he effectively kidnaps plaintiff for no lawful reason and not in any way in self-defense or protection of his own personal rights or property, but maliciously, knowingly and intentionally, if only by legal imputation of written law and of administrative notice upon his principals and superiors.

125. Deputy Bennett fails to shield himself as a man from personal liability by putting the onus of the arrest on a detached and objective magistrate who could have given him an arrest warrant, as required by T.C.A. § 40-7-103 for any misdemeanor offense that is not a public offense.

126. Mr. Bennett binds, drags and jails plaintiff for refusing to yield his constitutionally guaranteed liberties and rights or admit himself into commercial jurisdiction that defendant Bennett himself repeatedly denies is the basis of his authority to make the arrest, all of which injure plaintiff.

127. In false arrest of plaintiff, Mr. Garrett recklessly and in bad faith ordains employee Bennett to follow departmental policy, custom and training to falsely arrest plaintiff, giving Mr. Bennett pretended "authority" to affect seizure, to plaintiff's injury.

128.   Defendant Garrett having been put on awares under plaintiff's administrative notice regarding T.C.A. § 40-7-103 and a notice regarding the disabilities in motor vehicle Titles 55 and 65, engages in the act of false arrest knowingly and intentionally, maliciously as against law and the rights of plaintiff and all the people he pretends to protect.

129.   The state of Tennessee, via office of its attorney in the district, Coty Wamp, rejects defendant Garrett's criminal accusations against plaintiff and dismisses them, as they have no legal foundation or probable cause.

130.   In permitting false imprisonment and false arrest of plaintiff by its two employees, Hamilton County allows or encourages such acts, and does so with malice and bad faith, having been put under administrative notice and yet taking no steps to restrain the private acts of these men against plaintiff's rights against law and under personal or official capacity under color of law and under color of Hamilton County authority.

# Relief requested

## 1. <u>Punitive damages & costs</u>

131.   Plaintiff demands $500,000 in compensatory damages from defendants, and $24.5 million in punitive damages.

132.   The punitive damages proposed are to encourage defendants to be mindful of the Tennessee and U.S. constitutions, with their high view of the citizenry and harsh view against their abuse via police power without warrant, and to force the taxpayers, county commissioners and sureties of public servants to be mindful of

obligees' acts under law.

133.  Plaintiff demands reasonable and fair compensation for costs of this action, whether such costs be court fees, associated expenses, and his time handling the legal work in this case.

## 2. <u>Injunction upholding 'public offense' standard in warrantless arrest</u>

134.  Contents of this section, to be separately filed:
    a.  Motion for temporary injunction requiring obedience to warrantless arrest law at Tenn. Code Ann. § 40-7-103
    b.  Brief in support of such motion on likelihood of success, and basis for claim
    c.  Draft order of injunction

135.  As warrantless searches and seizures are presumptively unreasonable, Tenn. const. art. 1, § 7, plaintiff submits a petition for injunction for immediate consideration in face of continuing irreparable harm to him as he carries himself by automobile up or down county roads, and affects to live in Hamilton County and that is a ban on plaintiffs' general warrants scheme.

136.  He gives notice, and hereby reserves the right, of filing a motion for injunction in course of these proceedings, that being to force defendants to exercise the duty to make distinction in "traffic stops" between regulable traffic (cars, trucks, vehicles carrying cargo or passengers for here in commerce) and private movement by automobile (bearing guests, personal chattel and private property for family purposes, for comfort or pleasure) by citizens and others exercising protected federal rights.

137. Blinkered tag bulbs, damaged taillights, expired registration plates, failure to use an indicator, tinted windows, speeding and like breaches are not arrestable crimes without a warrant per Tenn. Code Ann. § 40-7-103, unless they meet the public offense standard.

138. Obeying the warrant rule may be sufficient to cure defendants of the presumption that all users of the road are in commerce, subject to the low bar of privilege enforcement administration under statute rather than the high bar of probable cause or reasonable articulable suspicion for criminal acts. Complying with the warrant rule will sharply curtail abusive practices against the traveling public on the public road such as that exemplified by this case, and may obviate the plaintiff's intent and right to motion for a separate injunction petitioning for an order for the deputy to make inquiry at a "traffic arrest" whether the person behind the wheel is engaged in commerce in a vehicle or freight motor vehicle, or merely in an automobile or other personal conveyance.[5]

139. In sum, plaintiff demands *immediate temporary injunction* upon the general warrants scheme wherein defendants deny the vital role of the judicial office in Hamilton County in which judges and magistrates screen allegations of criminal activity and so protect two parties vital to life in Hamilton County.

140. The first party protected is the deputy and officer, who is employed in public service and who should not be legally on the hook for false imprisonment and

---

[5] In Tennessee law, vehicle and freight motor vehicle are synonymous.

"Vehicle" and "freight motor vehicle" means every device in, upon, or by which any **person or property is or may be transported** or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks.

Tenn. Code Ann. § 55-1-103(e) (emphasis added)

false arrest torts because he has been misled by his municipal employer as to how the law works. The two men in this case, following their employer's policy and longstanding Redcoat warrant policy, are personally liable to plaintiff for their injuring him, and would not face grief of this lawsuit had they read the law, obeyed the law, warned (1) by well known and published law, and (2) under administrative notice making restatement of their duty.

141.    Secondarily, the warrant requirement protects members of the public from arbitrary and capricious acts by officers and spares these men and women the humiliation, shame and financial losses of arrest and imprisonment, which act for deputies is just another detail in a day's work. Members of the public have a right to be arrested under judicial sanction after the accuser faces the task of going to the magistrate's office in the jail, drafting a criminal complaint before such judge who evaluates it for sufficiency before issuing the arrest warrant.

142.    "(a) Upon information made to any magistrate of the commission of a public offense, the magistrate shall examine, on oath, the affiant or affiants, reduce the examination to writing, and cause the examination to be signed by the person making it."  T.C.A. § 40-6-203. The magistrate examines the deputy or officer, securing the officer and also the member of the public from personal and private seizure. Under general warrants, judicial examination beforehand is avoided, and due process for the citizen is denied.

## 3. Injunction as to traffic enforcement limit

143.    Contents of this section, to be separately filed:
   a. Motion for permanent injunction requiring defendants to make determination whether a person in an automobile traveling on the public road is involved in commerce activity subject to regulation

b. Brief in support of such motion

c. Draft order of injunction

144. Plaintiff gives notice he intends to ask by petition injunctive relief to prohibit *ultra vires* use by defendants of the state's authority to administer the driving privilege under (1) the federal administrator; "'Administrator' means the federal motor carrier safety administrator, the chief executive of the federal motor carrier safety administration, an agency within the United States department of transportation." Tenn. Code Ann. § 55-50-102, and (2) under the department of safety. Tenn. Code Ann. § 55-50-201. "This chapter shall be administered by the department of safety." Tenn. Code Ann. § 55-50-201.

145. Misusing conservator of the peace powers, defendants deny ingress and egress rights of plaintiff, his right to come and go from soil disposal and place without plaintiff's offending the Tennessee or U.S. motor vehicle and freight laws.

146. Defendants have duty to halt all poaching upon the authority of the Tennessee highway patrol and to cease and desist the practice of administering the motor vehicle laws as if they were agents of the departments of safety or revenue or the federal government, enforcing a law that makes freight subject to state troopers and enforcing the law as if users of the road are promiscuously subject to arrest or criminal citation, outside the clear boundaries of the privilege law infrastructure in Tennessee at §§ Titles 55 and 65 and its corresponding law federal law and U.S. CFR 49, transportation.

147. Injunction will require defendants distinguish between peacekeeping authority under law from administration of motor vehicle laws and commercial privilege management that plaintiff determines is improperly wielded, if defendants have any such authority to begin with.

Respectfully submitted,

*David Jonathan Tulis*

David Jonathan Tulis

STATE OF TENNESSEE, COUNTY OF HAMILTON — I, the undersigned Notary Public, do hereby affirm that David Jonathan Tulis personally appeared before me on the _____18th_____ day of _____November_____, and signed this affidavit as his free and voluntary act and deed.



_____Charlotte G. Olson_____
Notary Public

# Appendix

## Excerpts <u>Phillips v. Lewis</u>, 1877

The leading Tennessee case on the state's constitutional privilege-creation powers is <u>Phillips v. Lewis</u>, Shannon's Code, Vol. III, p. 230, 1877, focusing on Tenn. const. art. 2, sect. 28. The case is mysteriously not available on Westlaw. It is a case between John W. Phillips v. W.G. Lewis, tax collector, January term 1877. Privilege jurisprudence and authority are ignored by defendants in this case.

P. 238. The language is that hereafter the keeping of dogs shall be a privilege which shall be taxed as follows, etc. In this view of the question, the real point presented is whether the simple ownership of property of any kind can be declared by the legislature a privilege, and taxed as such, for if it can be done in the case of a dog, it may be done in the case of a horse, or any other species of property. It is clear this is what is done by this statute, except that [p. 239] it has gone even further, and taxed a party who shall harbor or

give shelter to a cur on his premises. This latter privilege, we take it, is one that will not be much sought after, but to the main question. It is evident the words, "keeping of dogs," in the statute mean simply ownership *** [.]

***

P. 240 "Merchants, peddlers and privileges," are the defined objects of taxation in the latter clause of the section. **It is certain the merchant is not taxed except by reason of his occupation, and in order to follow or pursue this occupation – one of profit** – in which it may be generally assumed capital, skill, labor, and talent are the elements of success, and are called into play by its pursuit. This pursuit or occupation **is taxed, not as property, but as an occupation.** Another element of this occupation is, that its object and pursuit is directed to a profit to be made off the general public, the merchant having a relation, by reason of his occupation, to the whole community in which he may do business, by reason of which he reaps, or is assumed to reap, the larger profit by drawing upon or getting the benefit of the resources of those surrounding him. The same idea is involved in the case of the peddler, who may range over a whole county by virtue of his license. His is an occupation of like character, a peculiar use of his capital, varied only in some of its incidents.

These occupations are taxed as such, and not on the **ad valorem principle.** So we take it the word privilege was intended to designate a larger, perhaps an indefinite class of objects, having the same or similar elements in them, distinguishing them from property, and these objects were to be defined by the legislature and taxed in like manner as might be deemed proper. But the essential element distinguishing the two modes of taxation was intended to be kept up. That is the difference between property and occupation or business dealing with and reaping profit from the general public, or peculiar and public uses of property by which a profit is derived from the community. ***

Page 241. The case of Marbury v. Tarver, 1 Hum. 94, was under the Act of 1835 *** prohibiting the keeping, or rather, **using the jackass for profit in the propagation of stock.** Here it is clear it was the keeping of the animal, and using him for **profit to be derived from the public** in a particular manner, that was declared to be a privilege and taxed as such. It is not a tax on the jack, or for owning him or harboring him as the case before us, but a tax upon the particular public use to which he is put, that makes the element of privilege in that case.

P. 243 We may concede, as we understand the argument of the Attorney General to do, that an <u>actual license issued to the party is not an essential feature of a privilege</u>, but is only the evidence of this grant of the right to follow the "occupation or pursuit," and the usual and perhaps universal incident to such grant, or that a tax receipt is, or even may be the evidence of the grant. Still, the thing declared to be a privilege is the occupation, the license but the incident to its engagement, described by statute, assuming, however, the license in one form or the other is to be had. We think it would be impossible to hold, in any accurate sense, that a man could only be entitled to hold and possess his property, paid for with his money and earned by his labor, upon the condition of obtaining a license, either from the county clerk, or a tax collector. His right is indefeasible under the constitution of the state. He can only be deprived of it by due process of law, or the law of the land as hereinafter explained.

P. 244 [T]he tax is on the occupation, avocation, or calling, it being one in which a profit is supposed to be derived, by its exercise, from the general public.

# EXHIBITS

1. Administrative notice on T.C.A. §40-7-103, arrest by warrant without warrant
2. Tennessee transportation administrative notice

## CERTIFICATION

Under Federal Rule of Civil Procedure 11, by signing above, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.



# Administrative notice

## On limits of arrest power in Tennessee under 'public offense' rule

Many cases in Hamilton County courts and in those across the state should be dismissed on due process grounds because the officer arrested the accused person without a warrant in violation of Tennessee Code Ann. § 40-7-103, arrest by officer without a warrant.

This administrative notice outlines the limits of the general assembly's list of exceptions to the general prohibition under the constitution for arrest by officer without an officer-sworn and judge-OK'd warrant prior to seizure. The law on grounds for arrest by officer is found at Tenn. Code Ann.§ 40-7-103. This notice indicates even a law making things easy for police officers and courts has limits — walls and barriers behind which the accused has every right to find protection.

Administrative notice on Tenn. Code Ann.§ 40-7-103 shows how:

> ➤ The term "public offense" has been deconstructed and redefined into the phrase "any crime" to allow for on-the-spot arrest by an officer in any case whatsoever, for his convenience, apart from the law's explicit design and in defiance of case law.

> ➤ Two tests are required before an arrest without a warrant for an offense not explicitly mentioned in any of the 11 grounds. These unenumerated offenses fall out under the heading "public offense." The officer's presence is test No. 1. The second test is that of public offense OR threatened breach of the peace. To honor one test and ignore the other is a due process violation.

> ➤ Public offense is a crime *whose nature or form is visible*. A public offense is one *in the nature of a breach of the peace*. Statute says "public offense" or "threat of breach of peace." A public offense is an *existing* breach of peace, which excludes many crimes.

> ➤ Rules of statutory construction forbid any reading or use of a law that deletes, negates or renders useless any of its provisions, which instant prosecution exemplifies, violating the state's peace and tranquility.

The statute 40-7-103 begins this way:

> (a)  An officer may, without a warrant, arrest a person:

(1) For a **public offense** committed or a **breach of the peace threatened** in the officer's presence *** [Emphasis added]

# 'Public offense' subject to citizen arrest power

Generally, a public offense is a crime that contains the elements of visibility, disturbance of the peace, uproar, threat, intimidation, spectacle, disturbance. It is akin to disorderly conduct.

Its visibility as an offense means it is the kind of crime for which one might be arrested by a fellow citizen. The common law citizen arrest power is codified at Tenn. Code Ann. § 40-7-109, arrest by private person, grounds. Among those grounds: "Public offense committed in the arresting person's presence."

The limitation on citizen arrest power under public offense doctrine is seen in State of Tennessee v. Ronald W. Byrd, 2001 Tenn. Crim. App. LEXIS 543 *; 2001 WL 840290. It focuses on an erstwhile citizen's arrest and the limits on that power. The court upheld Mr. Byrd's conviction for attempt to commit aggravated kidnapping, aggravated criminal trespass, and resisting arrest.

The judges say the facts of the case did not warrant an instruction on citizen's arrest, noting that the appellant's argument that "[congressional district director Bill] Snodgrass had committed a crime because Snodgrass did not examine the fifty-pound box of 'evidence' the appellant brought to Congressman Jenkins' office and, therefore, Snodgrass was involved in a conspiracy against the Appellant." This purported crime laid against Mr. Byrd is not one that meets the "public offense" standard.

A police officer operating outside his city's corporate jurisdiction may arrest an offender for a public offense in light of his personal rights as a citizen to make a citizen's arrest.

"Generally, municipal police authority does not extend into the limits of another municipality. See T.C.A. § 6-54-301. However, a police officer may still effect an arrest outside of his municipal jurisdiction to the same extent that a private citizen is authorized to do so by law. State v. Johnson, 661 S.W.2d 854, 859 (Tenn. 1983)." State of Tennessee v. Steven Troy Wilburn, 2015 Tenn. Crim. App. LEXIS 672 *; 2015 WL 5000627.

# Observability of crime a requirement

From early times, a crucial element in a citizen's arrest-type offense is its visibility. "Under our statute (Shannon's Code, section 6997) an officer may without a warrant arrest a person for a public offense committed in his presence. That means that the offense, or the facts constituting the offense, **must be revealed in** the presence of the officer. An officer cannot lawfully arrest a person without a warrant and search his person for

the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense was not in legal contemplation committed in the presence of the officer, and such an arrest is unauthorized, where **the facts constituting the offense are incapable of being observed** or are not observed by the officer" Hughes v. State, 145 Tenn. 544, 1921. [Emphasis added]

Public offenses are detectable by a human being's eyeballs, in the physical presence of that human being. "It is the duty of the sheriff and his deputies to keep their eyes open for evidence of public offenses." State ex rel. Thompson v. Reichman, 135 Tenn. 653 *; 188 S.W. 225 **; 1916 Tenn. LEXIS 46 ***; 8 Thompson 653

The court in State v. Ash put it this way: "That means that the offense, or the **facts constituting the offense,** must be **revealed** in the presence of the officer. An officer cannot lawfully arrest a person without a warrant and search his person for the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense **was not in legal contemplation committed in the presence of the officer**, and such an arrest is unauthorized, where **facts constituting the offense are incapable of being observed** or are not observed by the officer." Word of a crime reported to an officer by a citizen is not "in the officer's presence" because he didn't see it. State v. Ash, 12 S.W.3d 800 *; 1999 Tenn. Crim. App. LEXIS 764 ** [Emphasis added]

# 'Public offense' akin to 'breach of the peace'

The visibility and observability of a public offense allows a citizen's arrest — and also arrest by an officer without a warrant. That's because in the crime's visibility is the element of notoriousness or breach of the peace.

"'A breach of the peace is "a violation of public order, the offense of disturbing the public peace. An act of public indecorum is also a breach of the peace."' Galvin v. State, 6 Cold. 294. The sale of intoxicating liquors has always been recognized as tending to provoke disturbances of good order and breaches of the peace. When such sales were lawful it was found necessary to impose upon them strict regulations to prevent breaches of the peace. Speaking of such a regulation this court long ago said: 'This is a police regulation, for the good order and quiet of the city.' Smith v. Knoxville, 3 Head. 247." State ex rel. Thompson

The State ex rel. Thompson court goes for social color to a list of public offenses. "The term, 'breach of the peace' is generic, and includes riotous and unlawful assemblies, riots, forcible entry and detainer, the sending of challenges and provoking to fight, going around in public, without lawful occasion, in such manner as to alarm the public, the wanton discharge of firearms in the public streets, engaging in an affray or assault, using profane, indecent, and abusive language by one toward another, on a street and in the presence of others, or being intoxicated and yelling on the public streets in such manner as to disturb the good order and tranquillity of the neighborhood." 8 Ruling Case Law, p. 285.

From State ex rel Thompson 135 Tenn. 653, *669; 188 S.W. 225, **229; 1916 Tenn. LEXIS 46, ***17

Breaches of the peace are grounds for arrest by officer under Tenn. Code Ann. § 39-17-305, disorderly conduct. A person commits this offense in a public place "with intent to cause public annoyance or alarm" who engages in "fighting or in violent or threatening behavior" or creates a "hazardous or physically offensive condition" or "makes unreasonable noise that prevents others from carrying on lawful activities."

Similar offenses are 39-17-307, obstructing highway or other passageway, in which the accused causes a sensation; he "render[s] impassable or *** render[s] passage unreasonably inconvenient or potentially injurious to persons or property" by obstructing the way. The harassment charge at 39-17-208 tells of "threat of harm to the victim" and riot is put into the same category. Riot involves three or more people in "tumultuous and violent conduct, creates grave danger of substantial damage to property or serious bodily injury to persons" (Tenn. Code Ann. § 39-17-301).

These statutory offenses are breaches of the peace.

Authorities hold that "[a]lthough a breach of the peace frequently causes intimidation or fear, and in some instances intimidation and fear are essential elements, as where the offense is charged to have been committed by threatening and quarreling, conduct need not in all cases be such as is calculated to put one in fear of bodily harm, or to have had that effect, to constitute a breach of the peace. Similarly, although a breach of the peace may be committed by an act of violence, or by one likely to produce violence, or inciting to violence, violence or incitement to violence is not an essential element of breach of the peace in all instances" [notes omitted]. 12 Am Jur 2d Breach of Peace and Disorderly Conduct § 8

"A statute which prohibits any person from maliciously and willfully disturbing the peace or quiet of any neighborhood, family or person by loud or unusual noise, or by tumultuous or offensive conduct, is not overbroad where the statute seeks to regulate conduct, not pure speech, and is neutral with respect to the content of any expressive element of such conduct that may exist in a particular circumstance." 12 Am Jur 2d Breach of Peace and Disorderly Conduct § 14. Citation to State v. Poe, 139 Idaho 885, 88 P.3d 704 (2004).

In Bouvier's Dictionary: "A breach of the peace is 'a violation of public order, the offense of disturbing the public peace. An act of public indecorum is also a breach of the peace,'" cited in James Galvin vs. The State, 46 Tenn. 283 *; 1869 Tenn. LEXIS 56 **; 6 Cold. 283

# Affecting, disturbing the public

A public offense is one that offends the public. As officers stood in the public road opposite a home they heard "loud drunken talk and cursing come from defendant's house." The fact of Cartwright being drunk in his home did not warrant the invasion of that home, since it was not public drunkenness.

"But in addition there was the 'loud drunken talk and cursing,' and that conduct had annoyed the neighbors as evidenced by the fact that it was twice reported to these officers. This profanity **was a public nuisance since** it could be heard at places where the public were. It was, therefore, in public and in hearing of citizens. Compare Young v. State, 78 Tenn. 165. This **drunken cursing was disturbing the peace and quiet of this community** to the extent that they called upon the officers for relief. 'Generally, any practices tending to disturb the peace and quiet of communities, or corrupt the morals of the people, are indictable as public offenses by the common law.'" Parker v. State, 84 Tenn. 476, 478, 1 S. W. 202, 203. Cartwright v. State, 190 Tenn. 543 *; 230 S.W.2d 995 **; 1950 Tenn. LEXIS 520 ***

# Grounds for arrest by officer without warrant

The constitution forbids searches and seizures generally, but allows them under probable cause or warrant. The general assembly codifies general exceptions to the ban on arrest by officer without warrant at Tenn. Code Ann. § 40-7-103. The law gives 11 grounds for such extra-judicial arrests.

The number of offenses subject to arrest by cop without warrant are greater than 11, because the law allows arrest for felonies, unenumerated, and "public offenses," also unenumerated.

The warrantless arrest grounds include attempted suicide (a)(5),  domestic abuse (a)(7) and stalking (a)(9).

More exceptions to the general ban on warrantless arrest relate to traffic accidents. Briefly:

> ➤ At the scene of a traffic accident, the officer suspects drunkenness of a driver subject to Title 55, chapters 8 and 10 (DUI). 40-7-103(a)(6)

> ➤ At the scene of a highway crash, up to four hours later, of a "driver who has been transported to medical facility" under suspicion of DUI. 40-7-103(a)(8)

> ➤ A traffic accident, the officer may arrest the "driver of a motor vehicle" up to four hours after "leav[ing] the scene of the accident." 40-7-103(a)(10)

> ➤ An accident involves "serious bodily injury" or "death" and the "driver *** does not have a valid driver license" and "does not have evidence of financial responsibility." 40-7-103(a)(11)

A traffic accident under these conditions involving drunkenness is a public offense, a breach of the peace and a public disturbance fitting for arrest by officer without a warrant. State v. Duer, 616 S.W.2d 614 *; 1981 Tenn. Crim. App. LEXIS 336 **

# Threat of breach of peace

The law at issue gives the officer grounds for arrest for breaches of the peace — but also threats of breaches of the peace. The officer may arrest in anticipation of riot or breach of peace if the totality of circumstances seem to warrant.

The Thompson court indicates that an officer doesn't have authority to make an arrest for a misdemeanor if it doesn't occur in his presence or is not a breach of the peace. "We hold therefore, that a person found in control of such a place as we have described *is subject to arrest, without warrant, as for a breach of the peace threatened* in the presence of an officer. It may be true that he has not committed any offense for which he may be indicted and prosecuted. But neither has the man who has threatened an assault and battery, or to send a challenge, but has been arrested before he could put his threat into execution. In such cases the arrest is made not for the purpose of inflicting punishment, but to prevent the necessity for punishment." State ex rel Thompson at 672. [Emphasis added]

"To summarize, it is the duty of a sheriff to keep the peace and prevent or suppress crimes and public offences. In order to do this, he is authorized to arrest, without a warrant, persons known to be or suspected of being armed for the purpose of committing a breach of the peace, and such persons may be required to give security to keep the peace. All other breaches of the peace he is simply commanded to suppress. And, to this end, he is authorized, for such a breach of the peace threatened in his presence, to make an arrest without a warrant. He may likewise arrest for any misdemeanor committed in his presence. In the case of all other misdemeanors, he must have a warrant." State ex rel Thompson

# 'Officer's presence' includes team approach

The presence requirement is intended "to protect citizens from harassment and baseless arrests" State v. Ash, 12 S.W.3d 800 *; 1999 Tenn. Crim. App. LEXIS 764 ** But a major liberalization of 40-7-103 affords the state greater leeway in seizing people without a warrant whose offense occurs in the officer's presence.

The high court accounts for radios, communications devices and teamwork and cooperation among law enforcement officers to broaden the "officer's presence" standard. facilitates warrantless arrests by officers in the Ash case.

"In light of the increased speed with which offenders may flee from a witnessing officer and modern communications techniques available to the police, an offense may be said to have been committed in the presence of the arresting officer if he is in communication with and is assisting the witnessing officer. *** Police officers working together on a case may combine their collective perceptions so that if the composite otherwise satisfies the presence requirement that requirement is deemed satisfied although the arresting officer does not himself witness all the elements of the offense."

The court accepts the use of radio to widen the meaning of officer presence (State v. Bryant, 678 S.W.2d 480, Tenn Crim. App. 1984); communication between departments in separate jurisdictions to affect an arrest (State v Maxie Lewis Hunter, 1989 Tenn. Crim. App. LEXIS 713); officer receipt of "information from another law enforcement official who was witness to the misdemeanor" (State v. Teri L. Hopson, 1997 Tenn. Crim App. LEXIS 627)

However, Ash looks at "certain limited circumstances" that loosen the officer presence rule and does not disturb the "public offense" standard.

# Statutory construction

Finally, the rules of statutory construction forbid any reading of law that deletes, voids or makes of no effect any of its provisions.

A court cannot be relieved of the essential task of saying what the law means. The court is "guided by the rules of statutory construction found in the case law of this State. We recall at the outset that 'as a general proposition Code provisions in pari materia . . . *must be construed together,* and the construction of one, if doubtful, may be aided by the consideration of the words of and legislative intent indicated by the others.' (Gallagher v. Butler, 214 Tenn. 129, 137, 378 S.W.2d 161, 164 (1964)). Additionally, this Court has stated that 'the obligation of a court in construing a statute is to *give effect to the statutory purpose.* When the proper application of a statute is not entirely clear, the first inquiry is to ascertain the general legislative intent.' State by Lockert v. Knott, 631 S.W.2d 124, 126 (Tenn. 1982). Moreover, we have consistently held that 'in construing a statute, *all sections are to be construed together* in light of the general purpose and plan, evil to be remedied, and object to be attained. . . . .' State v. Netto, 486 S.W.2d 725, 729 (Tenn. 1972). *** While we recognize that an unambiguous statute does not require resort elsewhere than the face of the statute to ascertain legislative intent, see, e.g., Roddy Manufacturing Co. v. Olsen, 661 S.W.2d 868 (Tenn. 1983), this principle of construction cannot relieve us of the essential task of saying what the law means, particularly in a case of first impression. *** " (John C. Neff, commissioner of commerce and insurance, v. Cherokee Insurance Co., etc., No. 85-26-I, 704 S.W.2d 1; 1986 Tenn. LEXIS 648)

Given this summary of rules, converting "public offense" into "any crime" effectively deletes the rest of the statute.

For, if "public offense" means any crime, why would the general assembly bother to list 10 additional offenses for which the officer is allowed to arrest a citizen without a warrant?

Any practice by law enforcement to arrest people without a warrant is outside the permission of this statute and violative of the accused's right to be free generally speaking from warrantless arrest for misdemeanor crimes.

An arrest disregarding the limits in this law and the definition of public offense is violative of an accused person's due process rights. Charges in any case wherein this law is violated are rightly dismissed in their entirety in light of his right to a warrant signed before the arrest.


— Notice prepared by David J. Tulis
℅ 10520 Brickhill Lane
Soddy-Daisy, TN 37379
Tel 423-316-2680
Davidtuliseditor@gmail.com



# Legal notice on limits of warrantless arrest power

3 messages

**David Tulis** <davidtuliseditor@gmail.com>                    Thu, Apr 16, 2020 at 9:44 AM

To: district1@hamiltontn.gov
Bcc: LaVerne Sandridge <veritas2004@gmail.com>

Dear Mrs. Moore, please forward this email and its two attachments to Chairman Randy Fairbanks and the other Hamilton County commission members. Please send me an email making a statement that you have sent these individuals my documents.


Respectfully,

David Tulis

-----------------

10520 Brickhill Lane
Soddy-Daisy, TN 37379
April 14, 2020

Dear Sir, or Madam,

I am putting you under administrative notice as to the limits of arrest power pursuant to Tenn. Code Ann. 40-7-103, arrest by officer without warrant.

This notice re-establishes the notice given by the statute itself as a *public document*. This administrative notice is intended to give you fair warning that your actions are under scrutiny by the people, jealous of defending their rights. It is intended to caution you on your use of arrest powers so that you might avoid a general warrant scheme forbidden in the bill of rights.

The law identifies 11 grounds for arrest without a warrant, including a felony. It specifies that an officer may arrest a citizen without a warrant if the citizen or person commits a "public offense" or threatens a breach of the peace in the officer's presence. This notice establishes the definition of public offense, which police, sheriff's deputies, magistrates and district attorneys routinely ignore under pretense that "public offense" means any crime. Warrants are forward-looking, and give judicial sanction to future action. They give permission to arrest before the arrest takes place.

The bill of rights is clear: No arrest without a warrant in hand. General warrants are outlaw. "Section 7. That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not be granted."

The statute gives exceptions to the ban on warrantless arrests. It is a grant to peace officers and law enforcement officers to arrest *without a warrant*. But the grant goes only so far.

Disregard of the law — or of this notice reiterating its provisions — is to act against the rights of the people and outside the protection of the law. To violate this law, particularly in light of administrative notice, is false arrest with malice and in bad faith. False arrest in practice, and false arrest *under general permission or policy,* are triable and indictable offenses under Tenn. Code Ann. § 39-16-403, official oppression.

If you and your officers exceed the grants given in statute, you are putting yourselves — your persons and estates — in jeopardy. You violate the oath of office and open yourself or your officers to tort action by private attorneys for damage in violation of an individual's right to due process.

A response to this notice is not legally required. However, under well established rules regarding notice in Tennessee case law, nonresponse will be understood at trial as an act of acquiescence and acceptance, an estoppel to any denial that you knew the black-letter law as written and explained.

Respectfully yours,

David J. Tulis

--
David Tulis
Noogaradio 92.7 FM 95.3 HD4
Your CBS Radio affiliate
(423) 316-2680 c

_____

**2 attachments**

**Admin Notice Arrest by officer without warrant .pdf**
124K

**Press release Tulis county notice.pdf**
28K

**Moore, Patricia** <PLMoore@hamiltontn.gov>      Thu, Apr 16, 2020 at 10:10 AM
To: David Tulis <davidtuliseditor@gmail.com>

Mr. Tulis,


This is to acknowledge that I have received and sent your documents to the Hamilton County Board of Commissioners.


Patricia Moore, Legislative Administrator

Hamilton County Commission Office

625 Georgia Ave., Suite 401

Chattanooga, TN 37402

plmoore@hamiltontn.gov

423-209-7203 phone

423-209-7201 fax

[Quoted text hidden]

---

**David Tulis** <davidtuliseditor@gmail.com>      Thu, Apr 16, 2020 at 12:33 PM
To: steve@stevedugginslaw.com

Notice to county on Thursday.

David

---------- Forwarded message ---------
From: **David Tulis** <davidtuliseditor@gmail.com>
Date: Thu, Apr 16, 2020 at 9:44 AM
Subject: Legal notice on limits of warrantless arrest power
To: <district1@hamiltontn.gov>
[Quoted text hidden]
[Quoted text hidden]

---

**2 attachments**

📄 **Admin Notice Arrest by officer without warrant .pdf**
124K


# Press inquiry over violation of TCA 40-7-103

3 messages

---

**David Tulis** <davidtuliseditor@gmail.com>
To: cwamp@hcsheriff.gov

Mon, Oct 12, 2020 at 11:07 AM



**STRICKLAND, JUANITA DIANNE**
Age at Arrest: 36
Date of Birth: 01/26/1984
Arresting Agency: Hamilton County

Last Date of Arrest: 10/04/2020
Charge(s):
• DRIVING ON REVOKED, SUSPENDED OR CANCELLED
  
• REGISTRATION, EXPIRED

Dear Miss Wamp,

The arrest of Juanita Dianne Strickland Oct. 4 appears to be part of a pattern of deputy conduct that violates Tenn. Code Ann. § 40-70-103, arrest by officer without warrant.

Attached is notice of her case in Chattanoogan.com. The arrest report is notice to Sheriff Hammond and to you that the customary and usual practice of your department is to arrest people apart from having committed a public offense.

You know this well as a matter of law, as the law is a matter of public record, and the law has been brought to your attention by Administrative Notice as to the nature of 40-7-103, which was given to your employer, Hamilton County, via the county commission April 15, 2020.

Driving on revoked and driving on an expired registration do not meet Tennessee courts' standard for public offense. These may administrative wrongs. These may be crimes. But they are not public offenses, and there cannot be an arrest BEFORE a warrant is issued. The warrant must be obtained by the officer BEFORE the arrest, to prevent the people being subject to a bill of attainder and outlawed by officers making judicial determination apart from their authority under law.

To secure their rights, the people meeting in general assembly enacted Tenn. Code Ann. § 40-7-103 to limit the constitutional ban on arrest and to allow certain limited number of instances in which an officer an make an arrest without a warrant. That is, allowances that he make an arrest of the person before judicial approval of the seizure — without la warrant in his left or right hand or in his pocket.

A policy of false arrest is not just a tort, it is a triable and indictable offense.

The abuse of this law has received extensive coverage at TNtrafficticket.us and on 92.7 FM. As these deeds by your deputies are reported on, the reports give the department notice about the status quo and about the custom and usage of continuing violation of this law.

Given extensive coverage of your department's activities, it is fair to say the department is under **multiple notices** about this pattern of conduct and this policy of the department to reject the plain meaning of this law.

For your convenience, I attach a copy of the administrative notice about the requirements of 40-7-103. I also attach a copy of the statute with the key phrases highlighted for your consideration.

Respectfully yours,

David

Preview attachment Statute officer arrest without warrant.pdf

Statute officer arrest without warrant.pdf
62 KB

--
David Tulis
Noogaradio 92.7 FM 95.3 HD4
Your CBS Radio affiliate
(423) 316-2680 c

_____

**2 attachments**

**Admin Notice Arrest by officer without warrant .pdf**
124K

**Statute officer arrest without warrant.pdf**
63K

_____

**Wamp, Coty** <cwamp@hcsheriff.gov>              Mon, Oct 12, 2020 at 12:03 PM
To: "Tulis, David" <davidtuliseditor@gmail.com>

David, great to hear from you again. It would seem that you have learned a lot about warrantless arrests since our last encounter! I hear you've been saying great things about me on the radio… which, to your credit, means that people are listening. Congratulations.

Your email seems to only serve as a Notice to the Sheriff's Office and does not actually ask for a response. But, I am happy to share my thoughts.

Driving on a Revoked License, in Ms. Strickland's case, is an A misdemeanor. It is an A misdemeanor based upon her previous criminal history (see the Driving on Revoked statute TCA 55-50-504). As you well know, an A misdemeanor is a criminal offense punishable by up to 11 months and 29 days in the jail.

While everyone is entitled to their opinion on criminal statutes and legislative intent, Driving on a Revoked License is an offense that qualifies under TCA 40-7-103(a)(1) as an offense that is subject to arrest without a warrant. The Deputy did, in fact, witness Ms. Strickland driving a vehicle and subsequently verified that her license to do that has been revoked.

Thank you for your Administrative Notice. Some of it, such as the citizen's arrest portion, does not seem applicable to this case, as Ms. Strickland was arrested by a sworn Deputy. Further, your thoughts on a public offense being "akin" to a breach of peace are very interesting. However, the statute you've cited, which is the correct statute, specifically lists both "public offense" and "breach of peace" which tends to indicate that there is a difference between the two—if not, why would the legislature include both? Regardless, the law and courts are well-settled on the fact that an individual may be arrested, without a warrant, for driving on a revoked license. If there is a case that states this is unconstitutional, please forward to me, as I would love to read it.

Also in regard to your breach of peace argument, it would insinuate that there must be a breach of peace for an officer to make a warrantless arrest. If you believe this, do you believe that an officer who finds heroin, or any other illegal narcotic, in a person's waistband does not have the ability to arrest that person without a warrant because that offense is not a "breach of peace" as you describe it? Surely not.

If a deputy were required to swear out a warrant on this type of case before he makes an arrest, he would be allowing the person to continue breaking the law by driving away. Unless your insinuating that another deputy would sit on the side of the road with Ms. Strickland while the original deputy traveled to 601 Walnut Street to swear out the warrant? Again, surely not. Regardless, the law does not require that.

I respect your opinion and I do hope that Ms. Strickland can sort things out so that her license is reinstated and her registration renewed so that this does not happen again.

Thank you,

Coty Wamp

General Counsel
Hamilton County Sheriff's Office
600 Market Street

Chattanooga, TN 37402
423-209-7003


From: David Tulis [mailto:davidtuliseditor@gmail.com]
Sent: Monday, October 12, 2020 11:07 AM
To: Wamp, Coty
Subject: Press inquiry over violation of TCA 40-7-103

[Arrested illegaly driving case.png]
Dear Miss Wamp,

The arrest of Juanita Dianne Strickland Oct. 4 appears to be part of a pattern of deputy conduct that violates Tenn. Code Ann. § 40-70-103, arrest by officer without warrant.

Attached is notice of her case in Chattanoogan.com. The arrest report is notice to Sheriff Hammond and to you that the customary and usual practice of your department is to arrest people apart from having committed a public offense.

You know this well as a matter of law, as the law is a matter of public record, and the law has been brought to your attention by Administrative Notice as to the nature of 40-7-103, which was given to your employer, Hamilton County, via the county commission April 15, 2020.

Driving on revoked and driving on an expired registration do not meet Tennessee courts' standard for public offense. These may administrative wrongs. These may be crimes. But they are not public offenses, and there cannot be an arrest BEFORE a warrant is issued. The warrant must be obtained by the officer BEFORE the arrest, to prevent the people being subject to a bill of attainder and outlawed by officers making judicial determination apart from their authority under law.

To secure their rights, the people meeting in general assembly enacted Tenn. Code Ann. § 40-7-103 to limit the constitutional ban on arrest and to allow certain limited number of instances in which an officer an make an arrest without a warrant. That is, allowances that he make an arrest of the person before judicial approval of the seizure — without la warrant in his left or right hand or in his pocket.

A policy of false arrest is not just a tort, it is a triable and indictable offense.

The abuse of this law has received extensive coverage at TNtrafficticket.us and on 92.7 FM. As these deeds by your deputies are reported on, the reports give the department notice about the status quo and about the custom and usage of continuing violation of this law.

Given extensive coverage of your department's activities, it is fair to say the department

is under multiple notices about this pattern of conduct and this policy of the department to reject the plain meaning of this law.

For your convenience, I attach a copy of the administrative notice about the requirements of 40-7-103. I also attach a copy of the statute with the key phrases highlighted for your consideration.

Respectfully yours,

David


Preview attachment Statute officer arrest without warrant.pdf<https://mail.google.com/mail/u/0?ui=2&ik=9e13e2dc7f&attid=0.1&permmsgid=msg-a:r-5008634093891553460&th=174f3c8d61521698&view=att&disp=safe&realattid=f_kfv4xirl0>
[Image removed by sender.]<https://mail.google.com/mail/u/0?ui=2&ik=9e13e2dc7f&attid=0.1&permmsgid=msg-a:r-5008634093891553460&th=174f3c8d61521698&view=att&disp=safe&realattid=f_kfv4xirl0>
Statute officer arrest without warrant.pdf<https://mail.google.com/mail/u/0?ui=2&ik=9e13e2dc7f&attid=0.1&permmsgid=msg-a:r-5008634093891553460&th=174f3c8d61521698&view=att&disp=safe&realattid=f_kfv4xirl0>
62 KB<https://mail.google.com/mail/u/0?ui=2&ik=9e13e2dc7f&attid=0.1&permmsgid=msg-a:r-5008634093891553460&th=174f3c8d61521698&view=att&disp=safe&realattid=f_kfv4xirl0>



--
David Tulis
Noogaradio 92.7 FM 95.3 HD4<https://www.hotnewstalkradio.com/>
[Quoted text hidden]

---

**2 attachments**

~WRD000.jpg
1K



image002.png
77K

To: "Wamp, Coty" <cwamp@hcsheriff.gov>

Coty, Thank you for you email back with your thoughts. David
[Quoted text hidden]

**EXHIBIT 2**

# Administrative notice

## Table of Contents

Controlling authorities: Tenn. Code Ann., 49 U.S. Code  **2**
Purpose of regulation: Protect public assets  **3**
Regulation ensures safety of traveling public, pedestrians  **4**

Driving, operating vehicle for profit is subject to regulation  **5**
Federal law controls transportation enforcement  **7**
Operator defined commercial  **9**
Driver defined commercial  **9**
Are private cars subject to rules? Yes, if used in transportation  **10**
Subject to state commercial regulation: 'Vehicles'  **11**
Taxable activity  **12**
Department of safety authority commercial  **12**
No derogation of common law  **13**
'Roads used principally for travel, transportation'  **13**
Pleasure purpose of private travel  **15**
Private purpose, civic duty, personal necessity in travel  **16**
Travel, travelers  **17**
Vocation, profession, business or occupation  **18**
Abuses, oppression, nuisances forbidden  **18**

       Oppression. **19**
       Offenses against religious liberty. **19**
       Nuisances. **19**
       Extortion, Racketeering Influenced Corrupt Organizations. **19**
       Monopolies. **20**
       Oppression under federal law. **20**
       Criminal intent requisite in Tennessee law. **20**

## Abstract

The exercise of police power of Tennessee state government upon transportation is authorized through Titles 55 and 65 of the Tenn. Code Ann. The power regulates the for-profit use of the roads and highways by carriers whose owners, operators, chauffeurs and drivers operate motor vehicles in carrying people or goods for hire. Such conduct is regulable in the public interest — for the public health, safety and welfare. This regulation of transportation does not infringe on the right of travel upon the roadways. Constitutionally guaranteed rights were not abrogated with the imposition of the driver license in 1937 and other statutes, which rights are practiced today by people in this state for their pleasure, private purpose, and for the exercise of myriad other God-given rights such as religion and assembly.

[Document prepared by David Jonathan Tulis]

# Affidavit of power of attorney by David Jonathan Tulis

## Regarding Transportation Administrative Notice Tennessee

I, David Jonathan Tulis, being of sound mind and body, testify that I am a resident of Hamilton County, Tenn., and reside at 10520 Brickhill Lane, Soddy-Daisy.

Under my own power of attorney, I have prepared this affidavit and state as follows: I affirm I have delivered true and accurate copies of transportation administrative notice, attached 20pp, to six jurisdictions within Hamilton County, Tenn., describing Tenn. Code Ann. Title 55 and U.S. Code Title 49, the state and federal transportation codes respectively, their authority and the limits thereon. <u>Document prepared by David Jonathan Tulis.</u>

a. Chattanooga city council held a regularly-scheduled meeting February 20th, 2018, a Tuesday. I made a personal appearance before the council. At the end of the meeting's agenda, I took a turn at the podium and delivered a five minute oration about the distinction between travel and transportation, summarizing the contents of my transportation administrative notice. I gave members of the council a copy of the notice, either directly or by having one pass the copies down the row. Members are Chip Henderson, Jerry Mitchell, Ken Smith, Darrin Ledford, Russell Gilbert, Carol Berz, Erskine Oglesby, Anthony Byrd and Demetrus Coonrod. City attorney Wade Hinton received a copy. Record of my oral presentation is on Facebook at https://www.facebook.com/hotnews1240/videos/1615301948536995/

b. On March 1, 2018, I had an interview at 11 a.m. with Hamilton County Sheriff Jim Hammond, his spokesman Matt Lea and a third officer, Mr. Branham. I handed a copy of transportation administrative notice to Sheriff Hammond at my left, and a copy to Mr. Lea across the table at my right.

c. On March 5, 2018, I placed into the U.S. mails, under the registered letter seal, a copy of my transportation administrative notice to Tennessee Gov. Bill Haslam. (RE338842074US)

d. On March 5, 2018, I placed into the U.S. mail, a first-class envelope containing a complete copy of transportation administrative notice to David W. Purkey, commissioner of safety and homeland security, agent of Tennessee Gov. Bill Haslam.

e. On May 24, 2018, I handed a copy of transportation administrative notice to City of East Ridge council members Larry Sewell, Jacky Cagle, Esther Helton and Brian Williams of East Ridge, Tenn., during a regularly scheduled meeting, with copies of the document also going to Mayor Brent Lambert, city attorney Mark Litchford and city manager J. Scott Miller.

f. On Tuesday, Aug. 7, 2018, at 10:28 a.m., I emailed a copy as an attachment of transportation administrative notice to Red Bank city attorney Arnold Stulce at his law firm email address, astulce@mwalawfirm.com, providing the city of Red Bank administrative notice about the scope of state and federal transportation law.

To date, no rebuttal by any receiving party has been made. Further affiant saith not. I swear the above and foregoing representations of service and the attached notice are true and correct to the best of my information, knowledge and belief.

David Jonathan Tulis

STATE OF TENNESSEE, COUNTY OF HAMILTON — I, the undersigned Notary Public, do hereby affirm that David Jonathan Tulis personally appeared before me on the _12_ day of _September, 2018_, and signed this affidavit as his free and voluntary act and deed.

Notary Public

SARAH THOMPSON
STATE OF TENNESSEE
NOTARY PUBLIC
HAMILTON COUNTY
My Commission Expires Sept. 27, 2020

BK/PG: 470/118-138
18008511

| 21 PGS:AL-POWER OF ATTY | |
| --- | --- |
| JAN BATCH: 81325 10/16/2018 - 10:14 AM | |
| VALUE | 0.00 |
| MORTGAGE TAX | 0.00 |
| TRANSFER TAX | 0.00 |
| RECORDING FEE | 105.00 |
| ARCHIVE FEE | 0.00 |
| DP FEE | 2.00 |
| REGISTER'S FEE | 0.00 |

STATE OF TENNESSEE, RHEA COUNTY
TERESA HULGAN
REGISTER OF DEEDS

# Administrative Notice

## On Authority to Regulate Transportation, Travel on Tennessee Public Roadways

The Tennessee constitution, state law and court rulings delineate the state's authority over human activity upon the people's right of way. on roads, streets, lanes, boulevards, thoroughfares and highways, and the limits thereto.

The state's authority over certain uses of the road is described in several places: Title 55 of Tennessee code annotated (motor and other vehicles), title 4 (department of safety), title 5 (uniform administrative procedures act) and title 65 (motor carriers).

Federal authority to regulate interstate commerce and intrastate commerce is found at title 49 of the U.S. code.

Driver licenses are under the Uniform Classified and Commercial Driver License Act of 1988, regulating transportation on Tennessee roads, Title 55.

Transportation is "the removal of goods or persons from one place to another, by a carrier." A carrier is an "individual or organization engaged in transporting passengers or goods for hire." Black's Law Dictionary 6th ed.

Two types of carrier exist.

➤ "Common carriers are those that hold themselves out or undertake to carry persons or goods of all persons indifferently, or of all who choose to employ it. Merchants Parcel Delivery v. Pennsylvania Public Utility Commission, 150 Pa.Super. 120, 28 A.2d 340, 344. Those whose occupation or business is transportation of persons or things for hire or reward. Common carriers of passengers are those that undertake to carry all persons indifferently who may apply for passage, so long as there is room, and there is no legal excuse for refusal." Black's Law Dictionary 6th ed.

➤ "Private carriers are those who transport only in particular instances and only for those they choose to contract with." Black's Law Dictionary 6th ed.

Commerce means trade, traffic and transportation within the jurisdiction of the United States; between a place in a state and a place outside of the state, including a place outside the United States. It also means trade, traffic and transportation in the United States which affects any trade, traffic and transportation in any state. Tenn. Code Ann. § 55-50-102. Definitions 9(A), 9(B).

"Of course, the legislature has full authority over the highways of the State and may lay out their routes and regulate their use, and it may likewise prescribe the conditions on which highways may be used for gain by carriers for hire." S.E. Greyhound Lines v. Dunlap, 160 S.W.2d 418 (Tenn. 1942).

## Controlling authorities: Tenn. Code Ann., 49 U.S. Code

"Commercial driver license" means a license issued by the department in accordance with the standards contained in 49 CFR part 383 to an individual that authorizes the individual to operate a class of commercial motor vehicle." Tenn. Code Ann. § 55-50-102. Chapter definitions. "'Commercial motor vehicle' means *** a self-propelled or towed vehicle used on the highways in commerce principally to transport passengers or cargo" if the vehicle weighs 5 tons, carries more than 10 passengers or hauls hazardous materials. 49 U.S. Code § 31101 - Definitions

Tennessee department of safety and homeland security is an administrative department serving the governor's office and engages hearing officers to conduct contested case hearings under the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-3-2005. The commissioner "has the authority to establish and to promulgate such rules and regulations governing the administration and operation of the department ... not inconsistent with the laws of this state," under the authority of the state constitution. Tenn. Code Ann. § 4-3-2009.

The department has authority to oversee "administration and enforcement of title 65, chapter 15." Tenn. Code Ann. § 4-3-2012. Rules and regulations regarding motor carriers. It also has authority to implement title 55, chapter 50. Tenn. Code Ann. § 55-50-201.

# Purpose of regulation: Protect public assets

Title 65, chapter 15, concerns itself with the public safety and the preservation of the people's assets, namely the highways and roads in Tennessee. The law is enacted "for the sole purpose of promoting and conserving the interest and convenience of the public" and "to supervise and regulate the transportation of persons and property by motor vehicle over or upon the public highways of this state" as well as "certain businesses closely allied with such motor transportation." Tenn. Code Ann. § 65-15-101. Purpose — Participation in the unified carrier registration system.

The department's duty in a unified carrier registration system is to "protect the property of the state and its highways from unreasonable, improper or excessive use."

The regulable activity of operating as a motor carrier is to carry goods and people for hire. "(11) 'Motor carrier' means any person, firm, partnership *** operating any motor vehicle with or without semitrailers attached, upon any public highway for the transportation of persons or property, or both, or for providing or furnishing such transportation service, for hire as a common carrier." Tenn. Code Ann. § 65-15-102. Part definitions.

Taxicab, sedan, shuttle, motor vehicle, limousine are instrumentalities used by a "for-hire motor carrier," who is a "person engaged in the transportation of goods or passengers for compensation." People and companies involved in for-hire services moving goods and people use "motor vehicles," which term means "any automobile, automobile truck, motor bus, truck bus or any other self-propelled vehicle not operated or driven upon fixed rails or tracks" Tenn. Code Ann. § 65-15-102(14).

The people's roads are turned into instrumentalities, too, when used in interstate commerce. 29 CFR § 776.29 Instrumentalities and channels of interstate commerce. "(a) Typical examples. Instrumentalities and channels which serve as the media for the movement of goods and persons in interstate commerce or for interstate communications include railroads, highways, city streets; telephone, gas, electric and pipe line systems; radio and television broadcasting facilities; rivers ***. "

The department of safety and homeland security has the authority to "license, supervise and regulate every motor carrier in the state and promulgate rules and regulations pertaining thereto" Tenn. Code Ann. § 65-15-106. Powers of department.

Since 1921 in Tennessee, the law is concerned about the damage to the public right of way and puts parties who damage the roads for private profit under state supervision and criminal penalty.

"No vehicle, truck, engine, or tractor of any kind *** shall be permitted to operate upon any street, road, highway, or other public thoroughfare that, either by reason of its weight or the character of its wheels, will materially injure the surface or foundation of the street, road, highway, public thoroughfare, including the bridges thereon, unless and until the owner or operator of the vehicle of any kind has complied with the rules and regulations that may be prescribed by the departments of transportation and safety ***." Tenn. Code Ann. § 55-7-101. Operation of vehicles injurious to highways must conform to regulations.

"The owner of any vehicle driven upon the public thoroughfare, in violation of any of §§ 55-7-101 — 55-7-105, or regulations issued thereunder, shall also be liable in an action for damages caused to these public thoroughfares, the action to be prosecuted in the name of the state by the district attorney general of the district in which the violation occurs." Tenn. Code Ann. 55-7-106. Liability for damages to highways — Suit by district attorney general.

The general assembly imposes detailed provisions about operating motor vehicles,— for example, about making left-hand turns and right-hand turns (Tenn. Code Ann. § 55-8-140); about. a driver "of any motor vehicle carrying passengers for hire or of any school bus carrying any school child" being required to stop at railroad crossings, (Tenn. Code Ann. § 55-8-147), about following too closely (Tenn. Code Ann. § 55-8-124) and myriad other rules.

"Motor vehicles are dangerous machines; and, even when skillfully and carefully operated, their use is attended by serious dangers to persons and property. In the public interest the State may make and enforce regulations reasonably calculated to promote care on the part of all, residents and non-residents alike, who use its highways." Hess v. Pawloski, 274 U.S. 352 (1927).

# Regulation ensures safety of traveling public, pedestrians

The state of Tennessee regulates commerce on the roads through Title 55 of Tenn. Code Ann. via the department of safety & homeland security. "**(a)** The department of safety is vested with the power and authority, and it is its duty, to license, supervise and regulate every motor carrier in the state and promulgate rules and regulations pertaining thereto." Tenn. Code Ann.§ 65-15-106. Powers of department.

"The ability to drive a motor vehicle on a public highway is not a fundamental 'right.' Instead, it is a revocable 'privilege' that is granted upon compliance with statutory licensing procedures. State and local governments possess an inherent power, i.e. police power, to enact reasonable legislation for the health, safety, welfare, morals, or convenience of the public. Thus, our legislature, through its police power, may prescribe conditions under which the 'privilege' of operating automobiles on public highways may be exercised." State v. Booher, 978 S.W.2d 953 (Tenn. Crim. App. 1997).

Early court decisions in Tennessee and other states emphasize the need for the state to regulate commerce to promote public safety.

"The business of using the public highways for profit, earned by transporting persons and property for hire, has been definitely excluded from the category of private or personal rights arising from citizenship. Recent decisions of the Supreme Court of the United States have determined certain fundamental principles concerning the use of the highways. One is 'that the primary use of the state highways is the use for private purposes; that no person is entitled to use the highways for gain as a matter of common right. *** The statute under consideration is a comprehensive regulation of the use of the state highway system by both common carriers and contract carriers. It is designed *** to promote and preserve economically sound transportation, to regulate the burden of use to which the highways may be subjected, to protect the safety of the traveling public, and to protect the property of the state in the highways from unreasonable, improper, or excessive use.'" State v. Harris, 76 s.w.2d 324, 168 Tenn. 159 (1934).

"The movement of motor vehicles over highways, being attended by constant and serious dangers to the public and also being abnormally destructive to the highways, is a proper subject of police regulation by the state. In the absence of national legislation covering the subject, a state may prescribe uniform regulations necessary for safety and order in respect to operation of motor vehicles on its highways, including those moving in interstate commerce. A reasonable graduated license fee on motor vehicles, when imposed on those engaged in interstate commerce, does not constitute a direct and material burden on such commerce and render the act imposing such fee void under the commerce clause of the federal Constitution." Hendrick v. Maryland, 235 U.S. 610 (1915).

The Tennessee code provides myriad detailed rules of "vehicular traffic" to protect all users of the people's highways. For example:

➤ Tenn. Code Ann. § 55-8-110, traffic-control signals, in which green means go, orange means caution and red means stop.

➤ Rules about how "a vehicle shall be driven upon the right half of the roadway," Tenn. Code Ann. § 55-8-115.

➤ Rules about a "driver of a vehicle overtaking another vehicle," Tenn. Code Ann. § 55-8-117.

➤ Rules holding that "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent." Tenn. Code Ann. § 55-8-124.

The law's focus is that people involved in transportation be mindful of others, whether these others on the roadway are involved in transportation or in travel.

The law requires special care by those involved in transportation of another category of individual or person using the public right of way, namely the pedestrian.

"(a) Notwithstanding the foregoing provisions of this chapter, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway, and shall give warning by sounding the horn when necessary, and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

"(b) Notwithstanding any speed limit or zone in effect at the time, or right-of-way rules that may be applicable, every driver of a vehicle shall exercise due care by operating the vehicle at a safe speed, by maintaining a safe lookout, by keeping the vehicle under proper control and by devoting full time and attention to operating the

vehicle, under the existing circumstances as necessary in order to be able to see and to avoid endangering life, limb or property and to see and avoid colliding with any other vehicle or person, or any road sign, guard rail or any fixed object either legally using or legally parked or legally placed, upon any roadway, within or beside the roadway right-of-way including, but not limited to, any adjacent sidewalk, bicycle lane, shoulder or berm." Tenn. Code Ann. § 55-8-136. Drivers to exercise due care.

The duty of the Tennessee highway patrol is to "enforce all laws *** regulating traffic," Tenn. Code Ann. 4-7-104. To this end, the state has created a unified carrier registration system to "[p]rotect the welfare and safety of the traveling and shipping public in their use of the highways," Tenn. Code Ann. § 65-15-101(a)(3).

The provision makes clear: *Some people on the road travel, and some ship*. Shipping is a type of travel, a subcategory of travel.

Fees are collected from "freight motor vehicle" operators to fund regulatory activity protective of the traveling public in two categories of commercial and private. "This safety inspection fee shall provide a means for the state to exercise its police powers in order to protect the highways, and to promote the safety of the traveling public by the regulation of the use of and safe operation of such [commercial] vehicles over the highways." Tenn. Code Ann. § 65-15-112. Inspection, control, and supervision fee — Motor vehicle account.

"(16) 'Public highway' means every public street, alley, road, highway, or thoroughfare of every kind in this state used by the public, whether actually dedicated to the public and accepted by the proper authorities or otherwise." Tenn. Code Ann. § 65-15-102.

"[T]he primary use of the state highways is the use for private purposes; that no person is entitled to use the highways for gain as a matter of common right; that as a proprietor, in preserving its highways, the state may, with little restraint, prescribe the conditions on which those highways can be used." Hoover Motor Express Co. v. Fort, 167 Tenn. 628 *; 72 S.W.2d 1052 **; 1933 Tenn. LEXIS 71.

"An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the State its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them." Morris v. Duby, 274 U.S. 135 (1927).

"The reason for such a suspension or revocation is not to punish the driver but is to protect the general public by removing a potential menace from the highways. *** The reason for such a suspension or revocation is not to punish the driver but is to protect the general public by removing a potential menace from the highways. *** " In other words, the granting of this license in the first instance to the operator is a privilege which is subject to reasonable regulations in the interest of the public under the police power of the State." Goats v. State, 211 Tenn. 249, 364 S.W.2d 889, 891 (Tenn.1963).

"Because it is a means of guaranteeing a minimal level of driver competence, licensing improves safety on our highways and, thus, protects and enhances the well being of the residents and visitors of our state. Thus, our state legislature may properly within the scope of its police power enact reasonable regulations requiring licensing and registration of motor vehicles as it furthers the interests of public safety and welfare." State of Tennessee v. Robert K. Booher, 978 S.W.2d 953.

"By reason of the competition of the many engaged in the business, frequent contests between the operators for points advantage in the streets would follow; that there was a tendency fraught with danger in the many so engaged seeking the streets of heaviest travel for passengers, thus leading to congestion, as well as in hasty efforts made to head off and divert those waiting on the curb as offerers for passage on Street railways; that the desire and necessity to collect many small fares would tempt operators to indulge in swift and careless running; that by reason of receiving and discharging passengers at Short, unscheduled intervals there would be an interruption of traffic and endangering of other vehicles in the streets; that by reason of the small investment required many who are financially irresponsible would embark in the business." Memphis Street Railway Co. v. Rapid Transit Co., 6 Thomp., 99, 1915, justifying regulation of jitneys.

# Driving, operating vehicle for profit is subject to regulation

The driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare. The driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare. 5 Am. Jur., 593; 42 C.J., 740, 746; Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct., 140, 59 L.Ed., 385; Rutherford v. City of Nashville, 168 Tenn. 499, 79 S.W.2d 581,

"A state has power to regulate not only the use of its highways, but private contracts also, insofar as they contemplate that use; it may prescribe the terms upon which persons will be permitted to contract in respect of the use of the public highways for purposes of gain." Stephenson v. Binford, 287 U.S. 251 (1932).

The Stephenson case stresses that regulation of "motor carrier[s] for hire" is necessary in light of rising danger and "hazard on public highways."

TRAFFIC. Commerce; trade; sale or exchange of merchandise, bills, money, and the like. The passing of goods or commodities from one person to another for an equivalent in goods or money. Senior v. Ratterman, 44 Ohio St. 673, 11 N.E. 321; Fine v. Moran, 74 Fla. 417, 77 So. 533, 538; Bruno v. U. S., C.C.A.Mass., 289 F. 649, 655; Kroger Grocery and Baking Co. v. Schwer, 36 Ohio App. 512, 173 N.E. 633. The subjects of transportation on a route, as persons or goods; the passing to and fro of persons, animals, vehicles, or vessels, along a route of transportation, as along a street, canal, etc. United States v. Golden Gate Bridge and Highway Dist. of California, D.C.Cal., 37 F. Supp. 505, 512.

"These cases, though involving regulatory statutes or ordinances, all recognize and are based upon the fundamental ground that the sovereign state has plenary control of the streets and highways, and, in the exercise of its police power, may absolutely prohibit the use of the streets as a place for the prosecution of a private business for gain. They all recognise the fundamental distinction between the ordinary right of a citizen to use the streets in the usual way and the use of the streets as a place of business or main instrumentality of a business for private gain. The former is a common right, the latter an extraordinary use. As to the former the legislative power is confined to regulation, as to the latter it is plenary and extends even to absolute prohibition. Since the use of the streets by a common carrier in the prosecution of its business as such is not a right, but a mere license or privilege, it follows that the Legislature may prohibit such use entirely without impinging any provision either of the state or federal Constitution. *** [T]he use to which the appellant purposes putting the streets is not their ordinary or customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed." Hadfield v. Lundin, 98 Wash. 657. 1917.

"[T]he business of operating as a motor carrier of property for hire along the highways of the state is one affected with the public interest. It further declares that the rapid increase of motor carrier traffic and the lack of effective regulation have increased the dangers and hazards on public highways and made more stringent regulations imperative to the end that the highways may be rendered safer for public use, the wear and tear upon them reduced, discrimination in rates eliminated, congestion of traffic minimized, the use of the highways for transportation of property for hire restricted to the extent required by the necessities of the general public, and the various transportation agencies of the state adjusted and correlated 'so that public highways may serve the best interest of the general public.'" Stephenson v. Binford, 287 U.S. 251 (1932).

Cars, trucks, motor vehicles of all kinds make up traffic, as defined in Bouvier's Law Dictionary (1856). "TRAFFIC. Commerce, trade, sale or exchange of merchandise, bills, money and the like." People involved in traffic are drivers. "DRIVER. One employed in conducting a coach, carriage, wagon, or other vehicle, with horses, mules, or other animals." Bouvier's, 1856.

Drivers are people involved in commerce or who are servants. Tennessee statute identifies two types, one under authority of a commercial driver's license, the other under a classified driver license. "Commercial driver license" means a license issued by the department in accordance with the standards contained in 49 CFR part 383 to an individual that authorizes the individual to operate a class of commercial motor vehicle."

"Every person applying for an original or renewal driver license shall be required to comply with and be issued a classified driver license ***. Tenn. Code Ann. 55-50-301. License required — Requirements — Exception — Applicability to temporary licenses and permits. Among the requirements: "No person, except those expressly exempted in this section, shall drive any motor vehicle upon a highway in this state unless the person has a valid driver license under this chapter for the type or class of vehicle being driven." Tenn. Code Ann. § 55-50-301(a)(1).

Licenses give permission to do that which otherwise forbidden or prohibited. With reference to highways and roads: "Streets and Ways A permit to use street is a mere license revocable at pleasure. City of Boston v. A.W. Perry, Inc., 304 Mass. 18, 22 N.E.2d 627, 630; Lanham v. Forney, 196 Wash. 62, 81 P.2d 777, 779. City having right to regulate use of its streets by motor vehicles for hire may issue licenses; license being permission. Ex parte Schutte, 118 Tex.Cr.R. 182, 42 S.W.2d 252, 255. Permissive use and license as synonymous, Aldine Realty Co. of Pittsburgh v. Manor Real Estate & Trust Co., 297 Pa. 583, 148 A. 56, 58. Street railway location or elevated railway location as license. Boston Elevated Ry. Co. v. Commonwealth, 310 Mass. 528, 39 N.E.2d 87, 103, 106, 108. The privilege of using the streets and highways by the operation thereon of motor carriers for hire can be acquired only by permission or license from the state or its political subdivisions. Blashfield, Cyc. of Automobile Law and Prac., Perm. Ed., 331." Black's Law Dictionary, 4th edition.

"The driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare." Earl Sullins was a licensee who had obtained the privilege of driving an automobile by application and the remission of fees. He violated the 1939 driver license law, Section 11 of the original act, as amended by the 1939 Act, section 5, is as follows: "(b) In the event of any final judgment for damages to property or personal injury resulting from the negligent operation of any motor vehicle,*** the Department of Safety shall forthwith suspend the license of any chauffeur or operator of the motor vehicle *** until conditions are met." Sullins *v.* Butler, 135 S.W.2d 930 (Tenn. 1940).

The holding of a driver license by someone involved in regulable activity is subject to civil sanction; the seizure of a license or a finding that a person is a habitual offender against rules for operators of motor vehicles is subject to statute. "If the court finds that the defendant is not an habitual offender, the proceeding shall be dismissed, but if the court finds that such defendant is an habitual offender, the court shall make an order directing that such person shall not operate a motor vehicle on the highways of this state and that such person shall surrender to the court all licenses to operate a motor vehicle upon the highways of this state." Tenn. Code Ann. § 55-10-613(a)

"We conclude that the use of the word 'shall' by the legislature removes all discretion from the trial court as to the decision to revoke a person's license to drive once the determination that he is an habitual offender has been made. The sanction of declaring an individual to be an habitual offender is not a matter affected by principles of equity." State vs. Jonathan Malady, 952 S.W.2d 440; 1996 Tenn. Crim. App. LEXIS 449

# Federal law controls transportation enforcement

"The power of the federal government to regulate interstate commerce gives it control over motor vehicles engaged in business between one state and another of the same degree as such control exists as to any other class of vehicles engaged in the same occupation." 7A Am Jur 2d, Automobiles and highway traffic.

49 U.S. Code 13102, Motor Carriers etc. "(16) Motor vehicle. – The term 'motor vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used o a highway in transportation, or a combination determined by the Secretary *** ." (23) Transportation.—The term 'transportation' includes – (A) a motor vehicle, vessel, warehouse *** or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property."

At 18 U.S. Code, Part 1, Chapter 2 - AIRCRAFT AND MOTOR VEHICLES, among the definitions:

**"(6) Motor vehicle. —** The term 'motor vehicle' means every description of carriage or other contrivance propelled or drawn by mechanical power and used for commercial purposes on the highways in the transportation of passengers, passengers and property, or property or cargo.

**"(10) Used for commercial purposes. —** The term 'used for commercial purposes' means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit.

Code of Federal Regulations 49, part 383. Definitions: "Driver means any person who operates any commercial motor vehicle."

*Commercial motor vehicle* means any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle -

(1) Has a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater; or

(2) Is designed or used to transport more than 8 passengers (including the driver) for compensation; or

(3) Is designed or used to transport more than 15 passengers, including the driver, and is not used to transport passengers for compensation; or

(4) Is used in transporting material found by the Secretary of Transportation to be hazardous under 49 U.S.C. 5103 and transported in a quantity requiring placarding under regulations prescribed by the Secretary under 49 CFR, subtitle B, chapter I, subchapter C.

"*Motor vehicle* means any vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration, but does not include any vehicle, locomotive, or car operated exclusively on a rail or rails, or a trolley bus operated by electric power derived from a fixed overhead wire, furnishing local passenger transportation similar to street-railway service." 49 CFR 390.5 - Definitions.

"**(56)** 'Vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." Tenn. Code Ann. § 55-50-102. Chapter definitions.

Federal law pre-empts state law when its standards are more stringent. 49 CFR Part 392, Subpart A - General.

"§ 392.1 Scope of the rules in this part.

"Every motor carrier, its officers, agents, representatives, and employees responsible for the management, maintenance, operation, or driving of commercial motor vehicles, or the hiring, supervising, training, assigning, or dispatching of drivers, shall be instructed in and comply with the rules in this part.

"§ 392.2 Applicable operating rules.

"Every commercial motor vehicle must be operated in accordance with the laws, ordinances, and regulations of the jurisdiction in which it is being operated. However, if a regulation of the Federal Motor Carrier Safety Administration imposes a higher standard of care than that law, ordinance or regulation, the Federal Motor Carrier Safety Administration regulation must be complied with."

Federal jurisdiction over the Tennessee department of safety is through compacts under the interstate commerce clause of the U.S. constitution that give authority in Tennessee to 49 CFR Chapter III, Subchapter B - Federal Motor Carrier Safety Regulations (MCSAP). Rules for commercial trucks and drivers begin at part 390.

The federal government regulates interstate commerce to protect the public from injuries and losses caused by commercial motor vehicles. "The MCSAP is a federal grant program that provides financial assistance to states to reduce the number and severity of accidents and hazardous materials incidents involving commercial motor vehicles (CMVs). The goal of the MCSAP is to reduce CMV-involved accidents, fatalities, and injuries through consistent, uniform, and effective CMV safety programs" 49 CFR 350.101.

"The purpose of this part is to ensure that the Federal Motor Carrier Safety Administration (FMCSA), and states *** work in partnership to establish programs to improve motor carrier, CMV, and driver safety to support a safe and efficient transportation system. *** " 49 CFR § 350.103 What is the purpose of this part?

The national Motor Carrier Safety Assistance Program spends tax dollars to help protect travelers on the highways — to "[i]ncrease public awareness and education on commercial motor vehicle safety" and "[t]arget unsafe driving of commercial motor vehicles and non commercial motor vehicles in areas identified as high risk crash corridors" 49 CFR § 350.110.

Traffic enforcement against offenses such as speeding is directed at commercial carriers. Enforcement "means enforcement activities of state or local officials, including the stopping of vehicles operating on highways, streets, or roads for moving violations of state or local motor vehicle or traffic laws (e.g., speeding, following too closely, reckless driving, improper lane changes)" 49 CFR § 350.111.

The U.S. government oversees state protocols "to promote adoption and enforcement of State laws and regulations pertaining to commercial motor vehicle safety" 49 CFR 355.1 - Purpose. "These provisions apply to any state that adopts or enforces laws or regulations pertaining to commercial motor vehicle safety in interstate commerce" 49 CFR § 355.3 Applicability.

Federal rules apply to road users involved in transportation. "**(a)** The rules in subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce. **(b)** The rules in part 383 of this chapter, Commercial Driver's License Standards; Requirements and Penalties, are applicable to every person who operates a commercial motor vehicle, as defined in § 383.5 of this subchapter, in interstate or intrastate commerce and to all employers of such persons." 49 CFR § 390.3 General applicability.

# Operator defined as commercial

"(46) 'Operator' means: (A) For purposes of a conventionally operated vehicle, every person, other than a chauffeur, who drives or is in actual physical control of a motor vehicle upon a highway or who is exercising control over or steering a vehicle being towed by a motor vehicle." Tenn. Code Ann. § 55-8-101. Chapter and part definitions.

Operators are users of the highway in commerce, starting at the beginning of regulable highway commerce in Tennessee.

"3079a199. Operator is a common carrier, and the business is a privilege, when. — any person, firm, or corporation operating for hire any public conveyance propelled by steam, compressed air, gasoline, naphtha, electricity, or other motive power for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways (but not operated upon fixed tracks) by indiscriminately accepting and discharging such persons as may offer themselves for transportation along the way in course of operation, shall be and the same is hereby declared and defined to be a common carrier, and the business of all such common carriers is hereby declared to be a privilege." (1915, chapter 60 Section 1, cited Shannon's Compilation of Tennessee Statutes, Volume 2, 1917.

From nearly the beginning of automobile use in Tennessee, cities were allowed to demand permits, licenses and bonds for those working as operators. "Cities May impose a tax for such privilege. — And all such incorporated cities and towns are hereby authorized and empowered to impose upon all such common carriers a tax for the exercise of the privilege herein granted." Shannon's *A Compilation of the Tennessee Statutes,* 3079a204, 1917.

"The word 'Jitney' we think may be defined to be a self-propelled vehicle, other than a streetcar, traversing the public streets between certain definite points or termini, and as a common carrier conveying passengers at a 5-cent or some small fare between such termini and indeterminate points, and so held out, advertised, or announced." Memphis Street Railway Co. v. Rapid Transit Co., 6 Thomp., 99, 1915.

# Driver defined as commercial

The distinction between driver and traveler appears ancient. In the Holy Bible, a driver is a hireling serving a master with a freight-carrying animal, or a soldier taking orders. Moses and the Israelites exalted God's destruction of the Egyptian military in the Red Sea, "Both horse and driver he has hurled into the sea," Exodus 15:1. In a battle with the king of Judah, wicked King Ahab is hit by a "chance" arrow: "The king told his chariot driver, 'Wheel around and get me out of the fighting. I've been wounded,'" 2 Chronicles 18:33. In a lament, Job says, "Captives also enjoy their ease; they no longer hear the slave driver's shout," Job 3:18. The verb "drive" is used 89 times in the scriptures (NKJV) and often refers to the act of movement under compulsion and duress, as in, "I will send the hornet ahead of you to drive the Hivites, Canaanites and Hittites out of your way," Exodus 23:28.

Synonyms from driver are from the era of horse-drawn commerce, including synonyms such as carter, coachman, porter, shipper, wagoner, cabman, conductor, hack, drayman, teamster, carman, hauler, waggoner.

Tenn. Code Ann. defines various classes of commercial users of the public right of way.

"'Chauffeur' means every person who is employed by another for the principal purpose of driving a motor vehicle and every person who drives a school bus transporting school children or any motor vehicle when in use for the transportation of persons or property for compensation;" Tenn. Code Ann. § 55-8-101(8)

"'Driver' means: (A) For purposes of a conventionally operated vehicle, every person who drives or is in actual physical control of a vehicle." Tenn. Code Ann. § 55-8-101. Chapter and part definitions.

"DRIVER: One employed in conducting a coach, carriage, wagon, or other vehicle,with horses, mules, or other animals, or a bicycle, tricycle, or motor car, though not a street railroad car. See Davis v. Petrinovich, 112 Ala. 654, 21 South. 344, 36 L. R. A.615; Gen. St. Conn. 1902." Black's Law Dictionary 1st edition

"DRIVER — One employed in conducting or operating a coach, carriage, wagon, or other vehicle, with horses, mules, or other animals, or a bicycle, tricycle, or motor car, though not a street railroad car. See Davis v. Petrinovich, 112 Ala. 654, 21 So. 344, 36 L.R.A. 615; Isaacs v. Railroad Co., 7 Am. Rep. 418, 47 N.Y. 122." Black's Law Dictionary, 3rd Ed.

DRIVE. v. To impel motion and quicken. Bosse v. Marye, 80 Cal.App. 109, 250 P. 693, 696. To compel, urge, or move in some manner or direction. Howell v. J. Mandelbaum & Sons, 160 Iowa 119, 140 N.W. 397, 398, Ann.Cas.1913D, 349. To

control the motive power, as of a motor vehicle. Grant v. Chicago, M. & St. P. Ry. Co., 78 Mont. 97, 252 P. 382, 385." Black's Law Dictionary 4th edition

"A driver's license is usually prerequisite to the privilege of driving a motor vehicle on the highways, and no person except those individuals who are specifically exempted by law may drive or operate any motor vehicle on the highways of the state without a proper license to do so." 7A Am Jur 2d Automobiles and highway traffic. A driver or chauffeur is required to have a license to operate in commerce. "(33) 'License to operate a vehicle' means any operator's or chauffeur's license, or any other license or permit to operate a motor vehicle issued under the laws of this state." Tenn. Code Ann. § 55-8-101.

"'For-hire motor carrier' means a person engaged in the transportation of goods or passengers for compensation" Tenn. Code Ann. § 65-15-102(7).

"'Contract hauler' means any person, firm or corporation engaged in the transportation for compensation or hire of persons and/or property for a particular person or corporation to or from a particular place or places under special or individual agreement or agreements, and not operating as a common carrier" Tenn. Code Ann. § 65-15-102(4).

"'Motor vehicle' means any automobile, automobile truck, motor bus, truck, bus or any other self-propelled vehicle not operated or driven upon fixed rails or tracks *** " Tenn. Code Ann. § 65-15-102(14).

"'Private carrier' means a person who provides transportation of property or passengers by a commercial motor vehicle and who is not a for-hire motor carrier" Tenn. Code Ann. § 65-15-102(15).

A driver who is a licensee is distinct from a traveler. Transportation is a category of travel.

"Appellant's right to travel has not been infringed upon by the requirement by our legislature that an individual have a valid driver's license to lawfully operate a motor vehicle on the public highways of this state." State of Tennessee v. Anthony Troy Williams 2012 Tenn. Crim. App. LEXIS 832 *; 2012 WL 4841547.

Travel is unaffected by and not infringed upon by the transportation law in Tennessee because transportation law controls transportation, and doesn't infringe or abrogate the right of travel in Tennessee. The transportation statute passes the court's constitutional muster.

# Are private cars subject to rules? Yes, if used in transportation

In some uses, privately owned cars are subject to regulation under transportation.

**Transportation network company.** In the context of Internet-based ride-sharing services such as Uber and Lyft, state law holds such cars used by private individuals as motor vehicles in ride-sharing services are subject to regulation under Title 65. "'Personal vehicle' means a vehicle that is used by a transportation network company driver and is: **(A)** Owned, leased, or otherwise authorized for use by the transportation network company driver; and (B) Not a taxicab, limousine, or for-hire vehicle." Tenn. Code Ann. § 65-15-301. Part 3 definitions, transportation network companies. A rider in this context is involved in commercial activity as customer.

But "[a] transportation network company driver is not a chauffeur as defined in Tenn. Code Ann. 55-50-102(7) and is not subject to the requirements relating to commercial driver licenses or commercial vehicles covered under title 55, chapter 50." Tenn. Code Ann. § 65-15-302. Laws and regulations applicable to transportation network companies.

In the interest of public safety, a transportation network company driver must "possess a valid driver license," have "proof of registration for any motor vehicle used to provide a prearranged ride" and "possess proof of personal automobile liability insurance." Tenn. Code Ann. § 65-15-306. Individuals prohibited from acting as drivers.

**Ridesharing and jitney services.** Similarly, ridesharing or jitney services are subject to regulation because they are involved in transportation. "Any person operating for hire any public conveyance *** for the purpose of affording a means of street transportation similar to that ordinarily afforded by street railways (but not operated upon fixed tracks) by indiscriminately accepting and discharging such persons as may offer themselves for transportation along the course of operation, is declared to be a common carrier, and the business of all such common carriers is declared to be a privilege." Tenn. Code Ann. 65-19-101. Common carrier — Business declared a privilege. The common carrier is required to obtain a municipal privilege license, Tenn. Code Ann. § 65-19-102, and obtain a minimum $5,000 bond. Tenn. Code Ann. § 65-19-103. Bond required.

**Ridesharing services.** In Tennessee the general assembly passed a ridesharing act to regulate employers/employees involved in for-hire ridesharing arrangements.

"'Ridesharing' means the prearranged transportation of persons in a motor vehicle where such transportation is incidental to another purpose of a volunteer driver, and includes ridesharing arrangements known as carpools, vanpools, and buspools." Tenn. Code Ann. § 65-19-202. Part 2 Tennessee Ridesharing Act. It regulates any act to "transport passengers for hire."

Drivers transport goods or people for hire, but they also "travel." A driver who does "not exercise a sound and reasonable discretion in travelling" will have a wreck and be liable. Bouvier's 1853.

# Subject to state commercial regulation: 'Vehicles'

"(c) 'Motor vehicle' means every vehicle that is self-propelled, excluding motorized bicycles and every vehicle that is propelled by electric power obtained from overhead trolley wires. 'Motor vehicle' means any low speed vehicle, or medium speed vehicle as defined in this chapter. 'Motor vehicle' means any mobile home or house trailer as defined in § 55-1-105." Tenn. Code Ann. § 55-1-103.

"(e) 'Vehicle' and 'freight motor vehicle' means every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, excepting devices moved by human power or used exclusively upon stationary rails or tracks." Tenn. Code Ann. § 55-1-103. "Autocycle," "motor bicycle," "motor vehicle," "motorcycle," "vehicle" and "freight motor vehicle" defined.

"(87) 'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks." Tenn. Code Ann. § 55-8-101. Definitions

"(c) 'Truck' means every motor vehicle designed, used, or maintained primarily for the transportation of property." § 55-1-104. "truck" defined.

"(b) 'Owner' means a person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner for the purpose of chapters 1-6 of this title. Tenn. Code Ann. § 55-1-112. 'owner' 'person' defined.

"(c) 'Person' means every natural person, firm, copartnership, association, or corporation. Tenn. Code Ann. § 55-1-112. 'person' defined.

"(40) 'Motor vehicle' means every vehicle, including a low speed vehicle or a medium-speed vehicle that is self-propelled ***," with some trolly and electrical exceptions. Tenn. Code Ann. § 55-8-101.

Streets are available to public and private use. Statute focuses on for-profit use. "(76) 'Street' means the entire width between boundary lines of every way when any part thereof is open to the use of the public for purposes of vehicular travel" (Tenn. Code Ann. § 55-8-101).

(87) "'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a highway, excepting devices used exclusively upon stationary rails or tracks" (Tenn. Code Ann. § 55-8-101).

The commercial use of automobiles in Tennessee first came under regulation in 1917 in chapter 38 of state code, "Registration of automobiles, and the regulation of their operation."

**3079a186. Registration of automobiles, etc., with secretary of state and county court clerk; fees therefor.** — Before the owner of any automobile, motorcycle, auto truck, traction engine, or other vehicle of like character, used for the purpose of conveying persons or freight or for any other purpose, whether such vehicle is propelled by steam, gasoline, or electricity, or any other mechanical Power, she'll operate or permit to be operated,*** such owner shall register such vehicle with the Secretary of State, giving the motor power or horsepower and make the same together with the name and residence address of such owner, and shall upon payment of the following fees ***."

Among its provisions: The "owner of a motor vehicle" shall report his ownership of a vehicle Jan. 1 and pay a fee of $7.50 for a four-passenger automobile. The failure of a car dealer to report a sale to the secretary of state is a misdemeanor, and grand juries are given Inquisitorial powers to enforce the statue at 3079a193. "No automobile shall be run or driven upon any road, street, highway, or other public thoroughfare at a rate of speed in excess of twenty miles per hour[.]" 307a195. The traveler is obligated to stop his motor vehicle when approaching a wagon pulled by a horse. These are commercial relationships.

In provisions dealing with accidents, "there shall be a lien upon such automobile for the satisfaction of such recovery as the court may award whether, at the time of the injury, such automobile was driven by the owner thereof or by his chauffeur, agent, employee, servant, or any other person using the same by loan, hire, or otherwise." 3079a197. Lien on automobile for damages.

Black's Law Dictionary, 4th edition: "MOTOR VEHICLE. In the Uniform Act Regulating Traffic on Highways, 11 U.L.A., and similar statutes, any self-propelled 'vehicle,' defined as including every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human or muscular power or used exclusively upon stationary rails or tracks. The term 'motor vehicles,' although sometimes regarded as synonymous with or limited to 'automobiles,' often has a broader meaning, and includes not only ordinary automobiles, but also motorbusses and trucks, as well as motorcycles. Blashfield, Cyc. of Automobile Law and Prac., Perm. Ed., § 2."

# Taxable activity

Any act of transportation, the operation of motor vehicles, working for hire, owning and using motor vehicles on Tennessee roadways are taxable because they are privileged. "Automobiles for hire or rent. For each automobile truck for hauling baggage, freight or express , twenty-five horsepower or less, each, per annum .... $30." Etc Shannon's A Compilation of the Tennessee Statutes, Vol. V, 1918.

From the early 1900s, Tennessee state government demanded registration of cars used for profit on the roadway.

"Before the owner of any automobile, motorcycle, auto truck, or other vehicle of like character, used for the purposes of conveying persons of [or] freight or for any other purposes, whether such vehicle is propelled by steam, gasoline, or electricity, or any other mechanical power, shall operate or be permitted to operate upon any street, road, highway, or any other public thoroughfare in Tennessee, such owner shall register such vehicle with the state department of highways through the county clerk in the county in which owner resides, giving the motor number, rated horse power, tonnage capacity of motor trucks and make of same, together with the name and residence of such owner, and shall upon payment of the following fees ***." 3079a194b1. Registration of automobiles, ctc., with state department of highways, through County Court Clerk fees therefor. Shannon's Compilation of Tennessee statutes, Vol. 4, 1918.

# Department of safety authority commercial

The department of safety and homeland security has authority to regulate commerce and traffic. "The department of safety is vested with the power and authority, and it is its duty, to license, supervise and regulate every motor carrier in the state and promulgate rules and regulations pertaining thereto" Tenn. Code Ann. § 65-15-106(a).

DOS' officers have the duty of "policing and enforcing this part" and have "authority to make arrests for violation of this part" as well as other "orders, decisions, rules" etc.

The people through the general assembly added to these powers. "Such enforcement officers while enforcing and policing the provisions of this part also have authority to make arrests for any violations of the Tennessee Drug Control Act of 1989, compiled in title 39, chapter 17, part 4, and for violations of title 55, chapter 10, part 4 ["Alcohol and drug related offenses], and Tenn. Code Ann. § 55-50-408 ["driving under the influence"], when such violations are committed by a driver or an occupant of a vehicle regulated under this part." Tenn. Code Ann. § 65-15-106. Powers of department.

In a traffic stop in Tennessee upon someone involved in transportation for compensation under this part, such enforcement officer "upon reasonable belief that any motor vehicle is being operated in violation of this part" may demand the registration certificate issued to such vehicle, demand "any and all bills of lading, waybills, invoices or other evidences of the character of the lading being transported in such vehicle," require the operator to "inspect the contents of such vehicle for the purpose of comparing same with bills of lading, waybills, invoices or other evidence of ownership or of transportation for compensation." If the operator or chauffeur is performing "the transportation service" in violation of this part, the officer may "impound any books, papers, bills of lading, waybills and invoices" as evidence. Tenn. Code Ann. § 65-15-106. Powers of department.

It is unlawful for any motor carrier to not have a permit while using the public's roadways. Tenn. Code Ann. § 65-15-107 Interstate permits.

"(a) It is unlawful for any motor carrier, contract hauler, or exempt for-hire motor carrier to use any of the public highways of this state for the transportation of persons or property, or both, in interstate or intrastate commerce, without first having received a permit from the department or from any state designated as the base jurisdiction state for that carrier pursuant

to 49 U.S.C. ⸹ 11506 [omitted] as amended by ⸹ 4005 of the Intermodal Surface Transportation Efficiency Act of 1991. Violators are subject to penalty pursuant to Tenn. Code Ann. § 65-15-113." Tenn. Code Ann. § 65-15-107. Interstate permits.

The motor carrier or contract hauler must fill out forms and pay $50. Tenn. Code Ann. 65-15-109. Applications for permits. Insurance is required for parties involved in transportation to "adequately protect the interests of the public in the use of the public highway and with due regard to the number of persons and the amount of property to be transported, which liability or cargo insurance shall bind the obligors thereunder to make compensation for injury to persons, and loss of or damage to property resulting from the negligent operation by such motor carrier or contract hauler" Tenn. Code Ann. 65-15-110. Liability insurance requirements.

The department's highway patrol officers "have jurisdiction and authority to make such investigation of operators of motor vehicles for hire" Tenn. Code Ann. § 4-7-105. Enforcement of motor carrier laws.

In a stop alongside a roadway, the officer is investigating compliance with rules for transportation.

"(3) Such enforcement officers, upon reasonable belief that any motor vehicle is being operated in violation of this part, shall be authorized to require the driver thereof to:
(A) Stop and exhibit the registration certificate issued for such vehicle;
(B) Submit to such enforcement officer for inspection any and all bills of lading, waybills, invoices or other evidences of the character of the lading being transported in such vehicle; and
(C) Permit such officer to inspect the contents of such vehicle for the purpose of comparing same with bills of lading, waybills, invoices or other evidence of ownership or of transportation for compensation.
(4) It is the further duty of such enforcement officers to impound any books, papers, bills of lading, waybills and invoices which would indicate the transportation service being performed is in violation of this part, subject to the further orders of the court having jurisdiction over the alleged violation." Tenn. Code Ann. § 65-15-106. Powers of the department.

It is a Class C misdemeanor for any licensee operating a motor vehicle to not have his license available for exhibit on demand. "(a) Every licensee shall have the licensee's license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality *** " 55-50-351. License to be carried and exhibited on demand -- Arrest and penalty for violations.

Travelers who apply for licenses are given a Class D license, subject to the rules of transportation that apply to other classes whose weights and conditions are described in Title 55.

# No derogation of common law

The operation of the department of safety and homeland security does not abrogate or derogate common law rights of the people, and is constitutional.

Derogation defined: "The partial repeal or abolishing of a law, as by a subsequent act which limits its scope or impairs its utility and force. Distinguished from abrogation, which means the entire repeal and annulment of a law." Black's Law Dictionary 4th edition.

State agencies such as DOS are governed by the Uniform Administrative Procedures Act, which does no injury to the exercise of travel and other common law rights by either abrogation nor derogation. "(a)(1) This chapter shall not be construed as in derogation of the common law, but as remedial legislation designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination and shall be applied accordingly.

"(2) Administrative agencies shall have no inherent or common law powers, and shall only exercise the powers conferred on them by statute or by the federal or state constitutions." Tenn. Code Ann. § 4-5-103. Construction of chapter.

# Free use of public right of way

## 'Roads used principally for travel, transportation'

Roads and highways in Tennessee are built for public benefit. "Public highways and streets are intended principally for public travel, and all vehicles ordinarily used for purposes of travel and transportation are reasonably applicable to law are to be deemed public roads and ferries." Tenn. Code Ann. § 54-10-101. Public roads and ferries.

"The roads belong to the public, and the county court holds them in trust for the public, and while it is proprietor for the purposes of its trust, it is not proprietor in the sense that it is owner of the roads against the public, or any member thereof. The public road is a way open to all the people, without distinction, for passage and repassage at their pleasure." Sumner County v. Interurban Transp. Co., 141 Tenn. 493, 213 S.W. 412, 1918 Tenn. LEXIS 112, 5 A.L.R. 765 (1919).

The right of members of the public to travel on the road is recognized in commercial regulatory statute as being without [outside of] its purview as the rules pertain "exclusively to the operation of vehicles" upon highways. Tenn. Code Ann. § 55-8-102. Provisions refer to vehicles upon highways — Exceptions.

(a) The provisions of this chapter and chapter 10, parts 1-5 of this title, relating to the operation of vehicles, refer exclusively to the operation of vehicles upon highways, except where a different place is specifically referred to in a given section.

(b) (1) This chapter and chapter 10, parts 1-5 of this title apply to the operation of motor vehicles upon streets, roads, and highways within federal reservations or under federal ownership and control if the following conditions exist:

(A) The streets, roads or highways are generally open to public travel; ***

(C) The streets, roads, and highways covered by the agreement shall be considered public streets, roads, and highways of the state for purposes of enforcement of this chapter or chapter 10, parts 1-5 of this title.

"A law abiding citizen is free to travel anywhere he or she chooses. Where, as here, a citizen is randomly murdered in a high crime area and a perpetrator is convicted and sentenced to death, the citizen's decision to travel into the neighborhood has no bearing on whether the death penalty is disproportionate." State v. Bland 958 S.W.2d 651.

Commercial transportation and private travel are the object of the state's care, especially when transportation system failure threatens the normal activity on the highway. "(a) In the event of a transportation system failure, an imminent threat of a failure, or other emergency that the commissioner reasonably believes would present a hazard to the traveling public or a significant delay in transportation, then the commissioner shall have the authority to enter into contracts narrowly tailored to remedy the actual or imminent failure or other emergency ***." Tenn. Code Ann. 54-1-135. Transportation system failure.

"The fact that a highway is used chiefly by a private individual and is opened and maintained at his private expense does not make it a private highway where the statute declares it public and the whole public has the right to use the way." Bashor v. Bowman, 133 Tenn. 269, 180 S.W. 326, 1915 Tenn. LEXIS 92 (1915).

"We are of opinion that there is no ambiguity about the ordinary meaning of the expression 'public highway.' We think there can be no doubt that the common understanding of a public highway is such a passageway as any and all members of the public have an absolute right to use as distinguished from a permissive privilege of using same." Standard Life Ins. Co. v. Hughes, 203 Tenn. 636, 315 S.W.2d 239, 1958 Tenn. LEXIS 229 (1958).

"The streets of cities and towns belong to the public, and the municipality where they are located holds them in trust for it. This interest of the public is generally defined and held to be an easement. Humes [citation omitted] The general public have a right to use these thoroughfares for all the purposes for which they are condemned, dedicated, opened, constructed, and maintained; that is, they have the right to travel upon them, and to transport property through and over them, subject to such reasonable police regulations as the proper authorities may promulgate for the public convenience, health, morals, and safety." McHarge v. M. M. Newcomer & Co., 117 Tenn. 595 (1906).

The right to travel encompasses small, quotidian contexts (using a car to get to the store or to church, see Bashor v. Bowman, 133 Tenn. 269; 180 S.W. 326; 1915 Tenn. Lexis 92) and large, demographic-altering ones (relocation of domicile, see Doe v. State, 209 Tenn. App. Lexis 296; 2009 WL 637104).

"Personal liberty largely consists of the Right of locomotion — to go where and when one pleases — only so far restrained as the Rights of others may make it necessary for the welfare of all other citizens. The Right of the Citizen to travel upon the public highways and to transport his property thereon, by horsedrawn carriage, wagon, or automobile, is not a mere privilege which may be permitted or prohibited at will, but the common Right which he has under his Right to life, liberty, and the pursuit of happiness. Under this Constitutional guarantee one may, therefore, under normal conditions, travel at his inclination along the public highways or in public places, and while conducting himself in an orderly and decent manner, neither interfering with nor disturbing another's Rights, he will be protected, not only in his person, but in his safe conduct." II Am.Jur. (1st) Constitutional Law, Sect. 329, p. 1135.

"The right to travel interstate by auto vehicle upon the public highways may be a privilege or immunity of citizens of the United States. Compare Crandall v. Nevada, 6 Wall. 35. A citizen may have, under the Fourteenth Amendment, the right to travel and transport his property upon them by auto vehicle. But he has no right to make the highways his place of business by using them as a common carrier for hire. Such use is a privilege which may be granted or withheld by the state in its discretion, without violating either the due process clause or the equal protection clause." Packard v. Banton, 264 U.S. 140, 144.

"The right of a citizen to travel on public highway is a common right which he has under his right to enjoy 'life, liberty, and pursuit of happiness', and the right to 'travel', which means the right to go from one place to another, includes the right to start, to go forward on the way, and to stop when the traveler's destination has been reached, and also the right to stop on the way, temporarily, for a legitimate or necessary purpose when that purpose is an immediate incident to travel." Teche Lines, Inc., v. Danforth, 12 So.2d 784, 195 Miss. 226, Words and Phrases, Travel.

According to the most-cited supreme court case, Hale v. Henkel, "There is a clear distinction *** between an individual and a corporation. *** The individual may stand upon his constitutional rights as a citizen. He is entitled to carry on his private business in his own way…He owes nothing to the public so long as he does not trespass upon their rights. Upon the other hand, the corporation is a creature of the state…its powers are limited by law." Hale v. Henkel 201 U.S. 43 (1906).

# Pleasure purpose of private travel

Tennessee maintains its roadways and highways to serve the pleasure of those described as the "free people," Article 1, section 24, Tennessee constitution, in the state, people served by "free governments founded on their authority," Article 1, section 1.

"Can the legislature impose a privilege tax upon the mere taking a pleasure by the people, which is the exercise of an inalienable right, so long as it does not interfere with the rights of others? The taking of pleasure is a great benefit to humanity, and often a powerful agency for the restoration of health, as well as for the preservation of health." Shannon's Compilation of Tennessee Statutes, Vol. 1, 1917.

The state constitution ordains the highway system for the pleasure of the people. "A well regulated system of internal improvement is calculated to develop the resources of the State, and promote the happiness and prosperity of her citizens; therefore it ought to be encouraged by the General Assembly." Tenn. Const. Art. XI, § 10. Internal improvements to be encouraged.

The right of the public to travel pre-exists the constitution, which explicitly guards the people's innocent activity as being invulnerable to claims in court. "Nothing contained in this Constitution shall impair the validity of any debts or contracts, or affect any rights of property or any suits, actions, rights of action or other proceedings in Courts of Justice." Tenn. Const. Art. XI, § 2. No impairment of rights.

In law, pleasure appears most frequently in reference to one official serving "at the pleasure of" a superior, as in "Each commissioner shall hold office at the pleasure of the governor," Tenn. Code Ann. § 4-3-112(b).

Statute recognizes pleasure as an aspect of human nature, that belonging to and attained by individual human beings. "A permit shall be available from the department on an annual basis for individual owners of overdimensional boats used strictly for noncommercial pleasure purposes for double the amount of the regular fee described in subdivisions (h)(1) and (2). Tenn. Code Ann. 55-7-205. Permits for moving vehicles of excess weight or size — Permits for towing vehicles of excess weight, height, length, or width. Clubs are operated "operated exclusively for pleasure, recreation and other nonprofit purposes" Tenn. Code Ann. 57-4-102(8)(a). In provisions for taxes on fuels, "'Recreational vehicle' means vehicles such as motor homes, pickup trucks with attached campers, and buses when used exclusively for personal pleasure by an individual. In order to qualify as a recreational vehicle, the vehicle shall not be used in connection with any business endeavor," Tenn. Code Ann. § 67-3-1201(9) .

"It is well-settled law that every member of the public has the right to use the public roads in a reasonable manner for the promotion of his health and happiness." Sumner County v. Interurban Transp. Co., 141 Tenn. 493.

"Under the general law a public street is a public highway, and, if a highway, it is a 'road which every citizen has a right to use.' The right of the citizen to pass and repass on it is limited to no particular part of it, for, as said in the books, 'the public are entitled not only to a free passage along the highway, but to a free passage along any portion of it not in the actual use of some other traveler." 1 Hawk. P.C. 22; Ang. & D. Highw. §226. Under the common law a public highway was 'a way common and free to all the king's subjects to pass and repass at liberty,' and it followed, of course, under the law, that an

unauthorized obstruction was indictable and punishable as a nuisance." State v. Stroud, 52 S.W. 697 *; 1898 Tenn. Ch. App. LEXIS 167 **

A 1915 Davidson County act under private law imposing a privilege tax on all automobiles is overturned on grounds that pleasures are not taxable as vocations and that business use of roads impose more wear on the people's asset than their use for pleasure. Roadway use "for business purposes generally inflicts greater injury and detriment than their use for a pleasure; and a discrimination by taxing their use for pleasure, and leaving them untaxed for business purposes, is without reason or just cause, and is vicious." Shannon's compilation of the Tennessee Statutes, vol. 1, 1917.

The pleasure of travel for private purposes is highlighted in Dred Scott v. Sandford, 1857, securing the institution of slavery and a ban on free travel by African-Americans.

"For if they [blacks] were so received, and entitled to the privileges and immunities of citizens, it would exempt them from the operation of the special laws and from the police [60 U.S. 393, 417] regulations which they considered to be necessary for their own safety. It would give to persons of the negro race, who were recognised as citizens *in any one State of the Union, the right to enter every other State whenever they pleased, singly or in companies, without pass or passport, and without obstruction*, to sojourn there as long as they pleased, to go where they pleased at every hour of the day or night without molestation, unless they committed some violation of law for which a white man would be punished; and it would give them the full liberty of speech in public and in private upon all subjects upon which its own citizens might speak; to hold public meetings upon political affairs, and to keep and carry arms wherever they went. And all of this would be done in the face of the subject race of the same color, both free and slaves, and inevitably producing discontent and insubordination among them, and endangering the peace and safety of the State." Dred Scott v. Sandford, 60 U.S. 393, 396. 1856.

# Private purpose, civic duty, personal necessity in travel

The General Assembly in statute recognizes the private vs. public/commercial distinction. Regarding parking authorities: They "are authorized to be created to *** to maintain current data leading to efficient operation of off-street parking facilities, for the fulfillment of public needs for parking and the relation of parking to public transit and other public and private transportation modes." Tenn. Code Ann. 7-65-109(a). The law recognizes creations such as the "private entity" and the "private non-profit educational institution" Tenn. Code Ann. § 7-90-109(5).

There exist "state, federal and private forests." A private club "means any club or organization that does not permit the general public access to its facilities or activities" Tenn. Code Ann. § 39-17-1802(10)(A).

People and cargo can be involved in transportation, the court says. "These cases lay down certain fundamental propositions. Among others, that the primary use of the state highways is the use for private purposes; that no person is entitled to use the highways for gain as a matter of common right; that as a proprietor, in preserving its highways, the state may, with little restraint, prescribe the conditions on which those highways can be used.

"One objection made by complainants to the act of 1933 is that it applies only to motor vehicles used for carrying freight and does not apply to motor vehicles used for the hauling of passengers. It is said that a bus with its load often weighs more than a truck with its load, is therefore more destructive to the highway, and that the discrimination between trucks and busses cannot be justified. ***

"The peculiar importance to the state of conveniences for the transportation of persons in order to provide its communities with resources both of employment and of recreation, the special dependence of varied social and educational interests upon freedom of intercourse through safe and accessible facilities for such transportation, are sufficient to support a classification of passenger traffic as distinct from freight." Hoover Motor Exp. Co. v. Fort, 72 S.W.2d 1052, 167 Tenn. 628 (Tenn. 1934).

The people of Tennessee use the public right of way for private purposes and for necessity. "Except as provided in §§ 39-11-611 — 39-11-616, 39-11-620 and 39-11-621, conduct is justified, if: **(1)** The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and **(2)** The desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." Tenn. Code Ann. § 39-11-609. "Necessitas, quod cogit, defindit. (The necessity is a defense to what necessity compels one to do.) As when houses are blown up to stay a conflagration." Gibson's Suits in Chancery, 5th edition.

Perform civic and legal duties, and pay taxes, among others. "The public is interested in every citizen having a right of way to and from his lands or residence. [citation omitted] Such a right of way enables a citizen to discharge the duties he owes to the public, among which are mentioned the duties of attending courts,

elections, churches, and mills." Bashor v. Bowman. 133 Tenn. 269 *; 180 S.W. 326 **; 1915 Tenn. LEXIS 92 ***; 6 Thompson 269.

In a divorce ruling, "The mother also had the right to travel with the child to visit her family and friends for not longer than thirty days." Webb v. Webb 2009 Tenn. App. LEXIS 64 *; 2009 WL 348362.

An employee who has an accident in his private car during the scope of his employment is held to have been traveling "not within the scope of employment," but for private purposes. "When an employee's job requires travel, an employer may be vicariously liable for the employee's negligence while traveling. The threshold issue in cases involving travel is whether the employment created the necessity for travel. [citations omitted] If the employee's duties created a necessity for travel, then the employee is within the scope of employment while traveling, as long as the employee does not deviate from the employer's business and engage in conduct the employer [**12] had no reason to expect. If, however, the employee's work played no part in creating the reason for travel and was only incidental to the trip, then the trip was not within the scope of employment." Tennessee Farmers Mut. Ins. Co. v. American Mut. Liability Ins. Co., 840 S.W.2d 933 1992 Tenn. App. LEXIS 629 **.

Commission of a crime "qualifies" the "fundamental right" to move freely on the roadway. "The right to move freely from state to state is an incident of national citizenship protected by the privileges and immunities clause of the Fourteenth Amendment against state interference. *** [T]he defendant's criminal conduct within the state necessarily qualifying his right thereafter freely to travel interstate." Jones v. Helms 452 U.S. 412 *; 101 S. Ct. 2434 **. Travel for religious purposes is qualified to one who is on probation. "The State's interests in maintaining order, in the form of compliance with court directives, and keeping defendant within the State's borders, so as to properly monitor him, outweighed his right to travel to Texas." State v. Smithson 2005 Tenn. Crim. App. LEXIS 238 *; 2005 WL 639132.

"The right of the Citizen to travel upon the public highways and to transport his property thereon, in the ordinary course of life and business, is a common right which he has under the right to enjoy life and liberty, to acquire and possess property, and to pursue happiness and safety. It includes the right, in so doing, to use the ordinary and usual conveyances of the day, and under the existing modes of travel, includes the right to drive a horse-drawn carriage or wagon thereon or to operate an automobile thereon, for the usual and ordinary purpose of life and business." Thompson v. Smith, 154 SE 579, 11 American Jurisprudence, Constitutional Law, section 329, page 1135.

"The general public have a right to use these thoroughfares for all the purposes for which they are condemned, dedicated, opened, constructed, and maintained; that is, they have the right to travel upon them, and to transport property through and over them, subject to such reasonable police regulations as the proper authorities may promulgate for the public convenience, health, morals, and safety." McHarge v. M. M. Newcomer & Co., 117 Tenn. 595 (1906).

# Travel, travelers

The people of Tennessee are given the legal status of "free people" in the constitution for the state. Court cases make clear the distinction between travel and transportation, between traveler and driver. Bouvier's Law Dictionary distinguishes between a "traveler" and a "driver." "Traveler — One who passes from place to place, whether for pleasure, instruction, business, or health." Locket vs. State, 47 Ala. 45; Bouvier's Law Dictionary, 1914 ed., p. 3309. "Driver — One employed in conducting a coach, carriage, wagon, or other vehicle." Bouvier's Law Dictionary, 1914 ed., p. 940.

"[Robert Booher's] right to travel within this state or to points beyond its boundaries remains unimpeded. Thus, not only has the appellant's right to freedom of travel not been infringed, but also, we cannot conclude that this right is even implicated in this case. Rather, based upon the context of his argument, the appellant asserts an infringement upon his right to operate a motor vehicle on the public highways of this state. This notion is wholly separate from the right to travel. The ability to drive a motor vehicle on a public highway is not a fundamental 'right.' See Goats v. State,211 Tenn. 249, 364 S.W.2d 889, 891 (Tenn.1963) (emphasis added); Sullins v. Butler, 175 Tenn. 468, 135 S.W.2d 930, 932 (Tenn.1940) (citations omitted). Instead, it is a revocable 'privilege' that is granted upon compliance with statutory licensing procedures. See Reitz v. Mealey, 314 U.S. 33, 36, 62 S. Ct. 24, 26-27, 86 L. Ed. 21 (1941), overruled in part by, Perez v. Campbell, 402 U.S. 637, 91 S. Ct. 1704, 29 L. Ed. 2d 233 (1971); Goats, 364 S.W.2d at 891; Sullins, 135 S.W.2d at 932." State of Tennessee v. Robert K. Booher, 78 S.W.2d 953 (1997).

"The state legislature may properly enact reasonable regulations requiring licensing and registration of motor vehicles as it furthers the interests of public safety and welfare pursuant to its police power. The ability to drive a motor vehicle on a public highway is not a fundamental right. Instead, it is a revocable privilege that is granted upon compliance with statutory

Constitutionally guaranteed rights implicate one another. The communication among the people traveling on the public right of way is implied in:

➤ The freedom of worship and religion, as in, "No person shall in time of peace be required to perform any service to the public on any day set apart by his religion as a day of rest," Tenn. Const. Art. XI, § 15, religious holidays, and as in "That all men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience; *** that no human authority can, in any case whatever, control or interfere with the rights of conscience; and that no preference shall ever be given, by law, to any religious establishment or mode of worship." Tenn. Const. Art. I, § 3. Freedom of worship.

➤ " *** The free communication of thoughts and opinions, is one of the invaluable rights of man, and every citizen may freely speak, write, and print on any subject," Tenn. Const. Art. I, § 19. Freedom of speech and press.

➤ "That the citizens have a right, in a peaceable manner, to assemble together for their common good, to instruct their representatives, and to apply to those invested with the powers of government for redress of grievances, or other proper purposes, by address or remonstrance." Tenn. Const. Art. I, § 23. Rights of assembly. Etc.

# Vocation, profession, business or occupation

The people of Tennessee via their general assembly convert some vocations, professions, businesses and occupations into privileges, allowing them to be taxed. Tenn. Code Ann. § 67-4-1701. Privilege tax established — Collection.

"The occupations, businesses and business transactions deemed privileges are to be taxed, and not pursued without license *** . Tenn. Code Ann. § 67-4-101. Privileges taxable — License required.

Vocations subject to tax are as follows; lobbyists; agents; broker-dealers; investment advisers; accountants; architects; brokers; engineers; and landscape architects. audiologists; chiropractors; dentists; optometrists; osteopathic physicians; pharmacists; physicians; podiatrists; psychologists; speech pathologists; veterinarians; attorneys; and athlete agents. Tennessee Code Ann. § 67-4-1702. Occupations subject to tax.

"The essential elements of the definition of privilege is occupation and business, and not the ownership simply of property, or its possession or keeping it. The tax is on the occupation, business, pursuits, vocation, or calling, it being one in which a profit is supposed to be derived by its exercise from the general public, and not a tax on the property itself or the mere ownership of it." …"The legislature cannot, under our constitution, declare the simple enjoyment, possession, or ownership of property of any kind a privilege, and tax it as such. It may declare the business, occupation, vocation, calling, pursuit, or transaction, by which the property is put to a peculiar use for a profit to be derived from the general public, a privilege and tax it as such, but it cannot tax the ownership itself as a privilege. The ownership of the property can only be taxed according to value.") Phillips v. Lewis, 3 Shann. Cas. 231.

The courts overturned a 1915 Davidson County ordinance taxing all automobiles by converting their use in pleasure into an occupation or calling. "A privilege tax cannot be imposed upon anything or any act, unless it constitutes a business, occupation, pursuit or vocation. Such use for pleasure does not constitute a business, occupation, pursuit or vocation. Pleasure taking does not constitute a business, occupation, pursuit or vocation, in the sense of the definition of a taxable privilege; and therefore is not subject to privilege taxation." Shannon's Compilation of Tennessee Statutes, Vol. 1, 1917.

# Abuses, oppression, nuisances, extortion forbidden

"The claim and exercise of a constitutional right cannot be converted into a crime." Miller v. United States, 230 F.2d 486 (5th Cir. 1956).

The Tennessee constitution grants state government authority, but it is limited by the rights of the people as secured by that covenant when invoked by a belligerent claimant in person. "The declaration of rights hereto prefixed is declared to be a part of the Constitution of the state, and shall never be violated on any pretense whatever. And to guard against transgression of the high powers we have delegated, we declare that everything in the bill of rights contained, is excepted out of the general powers of the government, and shall forever remain inviolate." Tenn. Const. Art. XI, § 16. Bill of rights to remain inviolate.

"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." 9th amendment to U.S. constitution.

"That government being instituted for the common benefit, the doctrine of non-resistance against arbitrary power and oppression is absurd, slavish, and destructive of the good and happiness of mankind." Tenn. Const. Art. I, § 2 Doctrine of nonresistance condemned.

# Oppression

Official oppression is "(a) A public servant acting under color of office or employment commits an offense who: (1) Intentionally subjects another to mistreatment or to arrest, detention, stop, frisk, halt, search, seizure, dispossession, assessment or lien when the public servant knows the conduct is unlawful; or (2) Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful. (b) For purposes of this section, a public servant acts under color of office or employment if the public servant acts, or purports to act, in an official capacity or takes advantage of the actual or purported capacity. (c) An offense under this section is a Class E felony." Tenn. Code Ann. § 39-16-403. Official oppression.

## Offenses against religious liberty

"Except as provided in subsection (c), no government entity shall substantially burden a person's free exercise of religion even if the burden results from a rule of general applicability.

"(c) No government entity shall substantially burden a person's free exercise of religion unless it demonstrates that application of the burden to the person is: (1) Essential to further a compelling governmental interest; and (2) The least restrictive means of furthering that compelling governmental interest." Tenn. Code Ann. § 4-1-407. Preservation of religious freedom.

## Nuisances

Under common law, a nuisance is "anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable." Caldwell v. Knox Concrete Products Inc., 54 Tenn. App. 393, 402 (Ct. App. 1964).

The restatement of torts defines a public nuisance as "an unreasonable interference with a right common right to the general public." Restatement (Second) of Torts, 821B (1979).

Determining whether an unreasonable interference with the public right exists, the court should consider

1. Whether the conduct and involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or
2. Whether the conduct is prescribed by statute, ordinance or administrative regulation, or
3. Whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows, or has reason to know, has a significant effect upon the public right.

Tennessee's nuisance statute describes gang members as threatening other people and being involved in controlled substances and drugs. (B) A criminal gang, as defined by Tenn. Code Ann. § 40-35-121(a), that regularly engages in gang related conduct.

# Extortion and Racketeering Influenced Corrupt Organizations

**Tennessee law:** "(a) A person commits extortion who uses coercion upon another person with the intent to: (1) Obtain property, services, any advantage or immunity; (2) Restrict unlawfully another's freedom of action; or (3) (A) Impair any entity, from the free exercise or enjoyment of any right or privilege secured by the Constitution of Tennessee, the United States Constitution or the laws of the state, in an effort to obtain something of value for any entity; (B) For purposes of this section, "something of value" includes, but is not limited to, a neutrality agreement, card check agreement, recognition, or other objective of a corporate campaign; (C) For purposes of this section, 'corporate campaign' means any organized effort to unlawfully bring pressure on an entity, other than through collective bargaining, or any other activity protected by federal law." *** (c) Extortion is a Class D felony. Tenn. Code Ann. § 39-14-112. Extortion.

**Federal law** prohibits organizations that thrive on racketeering and other criminal activity. The Racketeering Influenced Corrupt Organization found in U.S. Code under Chapter 1 - 1961. Analyzing these practices is found pursuant to 18 U.S. Code § 1951 - Interference with commerce by threats or violence.

Case 3:24-cv-00368-TRM-MJD Document Filed 11/19/24 Page D Page D #: 78

(b)   "As used in this section— (1) The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining. (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

## Monopolies

The constitution forbids monopolies. "That perpetuities and monopolies are contrary to the genius of a free State, and shall not be allowed." Tenn. Const. Art. I, § 22. No perpetuities or monopolies.

## Oppression under federal law

"Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death." 18 U.S. Code § 242 - Deprivation of rights under color of law.

## Criminal intent requisite in Tennessee law

(a)      (1) A person commits an offense who acts intentionally, knowingly, recklessly or with criminal negligence, as the definition of the offense requires, with respect to each element of the offense.
         (2) When the law provides that criminal negligence suffices to establish an element of an offense, that element is also established if a person acts intentionally, knowingly or recklessly. When recklessness suffices to establish an element, that element is also established if a person acts intentionally or knowingly. When acting knowingly suffices to establish an element, that element is also established if a person acts intentionally.
(b) A culpable mental state is required within this title unless the definition of an offense plainly dispenses with a mental element.
(c) If the definition of an offense within this title does not plainly dispense with a mental element, intent, knowledge or recklessness suffices to establish the culpable mental state." Tenn. Code Ann. § 39-11-301

In the definitions: "(a) 'Intentional' refers to a person who acts intentionally with respect to the nature of the conduct or to a result of the conduct when it is the person's conscious objective or desire to engage in the conduct or cause the result. "(b) 'Knowing refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result. *** Tenn. Code Ann. § 39-11-302.

"Individual rights protection is the only legitimate reason for government to exist *** [T]he duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property ***." Tyler v. Judges of Court of Registration, 179 U.S. 405, 409 (1900).

STATE OF TENNESSEE, RHEA COUNTY
The foregoing instrument and certificate were noted in Note Book
Page _____ at _____ o'clock _____ A_m October 16 _____ 20_18_
and recorded in Deed Book _470_ Page _118-138_ State Tax _____
Paid $ _____ Fee _2.00 Recording Fee _105.00 Total $ _107.00_
Witness My Hand Receipt No _____
                          Teresa Hulgan
                              Register
                          Jan Reed
                              Deputy