UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| DAVID JONATHAN TULIS, | ) | |
|---|---|---|
| | ) | Case No. 1:24-cv-368 |
| *Plaintiff*, | ) | |
| | ) | Judge Travis R. McDonough |
| v. | ) | |
| | ) | Magistrate Judge Michael J. Dumitru |
| BRANDON BENNETT et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## MEMORANDUM OPINION

Before the Court are Defendant Brandon Bennett, Austin Garrett, and Hamilton County's motions to dismiss (Docs. 14, 16). For the following reasons, Defendants' motions (*id.*) will be **GRANTED**.

### I. BACKGROUND[1]

On November 22, 2023, Defendant Corporal Brandon Bennett of the Hamilton County Sherriff's Department pulled over Plaintiff David Tulis. (*See* Doc. 1, at 12.) Bennett explained that he was stopping Plaintiff for a damaged taillight. (*See Tulis Video*, at 0:10–0:20.) Bennett told Plaintiff that the red plastic covering on the taillight was broken. (*See id*. at 0:20–0:35.) Plaintiff responded, "yes sir, I understand." (*Id*. at 0:35.) Bennett then requested Plaintiff's license. (*See id*.) Plaintiff did not give Bennett his license and instead asked, "why do you ask this question?" (*Id*. at 0:35–0:45.) Bennett told Plaintiff that he was in violation of a traffic law

---

[1] These facts are drawn from Plaintiff's complaint as well as the video Plaintiff recorded during his arrest. (*See* Doc. 1, at 12–16.)

and, therefore, he was requesting Plaintiff's license. (*Id*. at 0:45–1:00.) Plaintiff responded, "do you believe I'm operating in commerce right now sir?" (*Id*. at 1:00–10.) Bennett told Plaintiff, "I'm not going to get into all that with you. You're driving a motor vehicle on a state roadway, so I am going to ask for your license." (*Id*.)

Bennett continued to ask for Plaintiff's license, and Plaintiff continued to refuse. (*See id.* at 1:10–2:00.) Plaintiff again asked Bennett why he believed Plaintiff was "traveling right now in commerce." (*Id*. at 2:05.) Bennett stated, "I observed you on a motorway" to which Plaintiff responded "yes." (*Id.* at 2:05–2:10.) After additional discussion, Bennett asked Plaintiff, "are you going to comply and let me see your driver's license or not?" (*See id.* at 4:15–25.) Bennett repeated his question two more times and Plaintiff replied "if I have a license, I'm not on the license right now . . . I do [have a license] but I have it for the purposes of carrying goods or people for hire and I rebut the presumption in your question, officer, that I'm doing that right now." (*Id*. at 4:25–5:00.) Bennett responded "you're not carrying any people. I don't know about goods. That has nothing to do with it. . . . The issue at hand is you operating a vehicle under [ ] a traffic violation of the State of Tennessee." (*Id.* at 5:00–25.) Bennett then asked Plaintiff to step out of the vehicle, which he did. (*See id*. at 5:30–45.) Bennett handcuffed Plaintiff and led him to his cruiser. (*See id.* at 6:00–30.) Plaintiff was then taken to the Hamilton County Detention Center where he was booked. (*See* Doc. 1, at 14.)

After being charged with failing to produce his driver's license and a taillight violation, Plaintiff was released on his own recognizance. (*See id*. at 14–15.) Plaintiff appeared in General Sessions Court and argued that the judge must dismiss the case because "the court [had] no subject matter jurisdiction to hear it." (*Id*. at 15.) The judge rejected Plaintiff's argument and did not dismiss the charges. (*See id*. at 15–16.) The District Attorney's Office, however, later

dropped the charges.  (*See id.* at 16.)

Plaintiff filed this action on November 19, 2024.  (*See* Doc. 1.)  Plaintiff asserts two claims against Defendants pursuant to 42 U.S.C. § 1983:  (1) false arrest and (2) false imprisonment.[2]  (*See id*.)  Defendants moved to dismiss for failure to state a claim upon which relief could be granted. (Docs. 14, 16.)  Plaintiff opposes Defendants' motion. (Docs. 27, 28.) Defendants' motions are now ripe for the Court's review.

## II.   STANDARD OF REVIEW

According to Rule 8 of the Federal Rules of Civil Procedure, a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Though the statement need not contain detailed factual allegations, it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

A defendant may obtain dismissal of a claim that fails to satisfy Rule 8 by filing a motion pursuant to Rule 12(b)(6).  On a Rule 12(b)(6) motion, the Court considers not whether the plaintiff will ultimately prevail, but whether the facts permit the court to infer "more than the mere possibility of misconduct."  *Id*. at 679.  For purposes of this determination, the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.  *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007).  This assumption of veracity, however, does not extend to bare assertions of

---

[2] While Plaintiff's complaint is neither entirely clear nor coherent, the Court construes this as a § 1983 action because Plaintiff's contention is that Defendants violated the Fourth Amendment, and he cites § 1983 in laying out his causes of action.  (*See* Doc. 1, at 8.)

legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

After sorting the factual allegations from the legal conclusions, the Court next considers whether the factual allegations, if true, would support a claim entitling the plaintiff to relief. *Thurman*, 484 F.3d at 859. This factual matter must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Generally, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Rule 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018) (citing Fed. R. Civ. P. 12(d)). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). This extends to the use of video evidence in § 1983 actions. *See Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (holding that courts may "consider[] videos at the motion-to-dismiss stage"). However, "[i]f there is a factual dispute between the parties, [the court] can only rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict' or 'utterly discredit' the

plaintiff's version of events."³ *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

42 U.S.C. § 1983, provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights . . . secured by the Constitution and laws [of the United States], shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To succeed on a claim under § 1983, a plaintiff must show: "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of law."⁴ *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014) (citations omitted).

Here, Plaintiff alleges that Defendant falsely arrested and imprisoned him in violation of the Fourth Amendment. However, when a claim of false imprisonment arises out of a false arrest, the claims are analyzed together as a single false arrest claim. *See Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) ("[T]he claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs."); *Corvin v. Bice*, No. 1:05-CV-219, 2007 WL 776501, at *4 (E.D. Tenn. Mar. 9, 2007) ("[The plaintiff's] claims of false arrest and false imprisonment are the same in this case since the alleged false imprisonment arises out of the alleged false arrest . . ."); *Dunn v. Pietraszkiewicz*, No. 1:24-CV-00303, 2025 WL 277754, at *6–7 (N.D. Ohio Jan. 23, 2025) (analyzing false imprisonment and false arrest as a single false

---

³ The use of video is not crucial to the outcome in this case. Neither party disputes what happened that night. The parties dispute questions of law, not fact. Moreover, in his reply briefs, Plaintiff does not object to the Court considering the video. (*See* Docs. 27, 28.)

⁴ Defendants do not dispute they were acting under color of law. (*See generally* Docs. 15, 18.)

5
Case 1:24-cv-00368-TRM-MJD   Document 37   Filed 04/09/25   Page 5 of 10   PageID #: 333

arrest claim because the false imprisonment arose from the false arrest).

To prevail on a claim for false arrest under § 1983 for violation of Fourth Amendment rights, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff. *See Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). When a plaintiff has been arrested for multiple charged offenses, "[i]f probable cause exists to arrest the suspect for any of the charged offenses, then the false arrest claim must fail." *Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. 2019) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005)).

The Sixth Circuit defines probable cause as "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010) (citation and internal quotations omitted). Probable cause exists when, "at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an individual either had committed or was committing an offense." *United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (citation and internal quotations omitted). To determine whether an officer had probable cause to make an arrest, the "reviewing court must assess the existence of probable cause from the perspective of a reasonable officer on the scene" at the time the incident occurred and may not use "the 20/20 vision of hindsight." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (citation and internal quotations omitted).

Importantly, an officer may arrest a person "even for a misdemeanor, no matter how minor, so long as he has probable cause to believe that an offense has been committed." *Holloran v. Duncan*, 92 F. Supp. 3d 774, 792 (W.D. Tenn. 2015) (quoting *Straub v. Kilgore*, 100

F. App'x. 379, 383 (6th Cir. 2004)). Additionally, there is no constitutional requirement that police officers obtain a warrant before arresting a person for "crimes committed in the presence of an arresting officer." *Virginia v. Moore*, 553 U.S. 164, 176 (2008); *see also United States v. Watson*, 423 U.S. 411 (1976).

Plaintiff alleges he was arrested for (1) a taillight violation and (2) failing to produce his driver's license. (*See* Doc. 1, at 14.) As a result, if the officer possessed probable cause to arrest Plaintiff for *either* offense, then Plaintiff's § 1983 claims necessarily fail. *See Fineout*, 780 F. App'x at 328.

The taillight statute, Tennessee Code Annotated § 55-9-402(b)(1), requires vehicles to have "two [] red tail lamps and two [] red stoplights on the rear of the vehicle." The statute further provides that "[e]ach lamp and stoplight required in this section shall be in good condition and operational." *Id.* § 55-9-402(c). A violation of the statute is a Class C misdemeanor. *Id.* § 55-9-402(h). The driver's license statute requires that "[e]very licensee shall have the licensee's license in immediate possession at all times when operating a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality." Tenn. Code Ann. § 55-50-351(a). Refusing to produce a driver's license when requested by law enforcement is also a Class C misdemeanor. *Id.* § 55-50-351(b).

Here, Plaintiff does not allege that his taillight was undamaged or "in good condition." (*See generally* Doc. 1.) In the video Plaintiff recorded of his arrest, Bennett explained that he was stopping Plaintiff for a damaged taillight. (*See Tulis Video*, at 0:10–0:35.) Plaintiff responded, "yes sir, I understand." (*Id.* at 0:35.) Plaintiff did not deny that his taillight was damaged. (*See id.*) Nor does Plaintiff deny that his taillight was broken in his reply to

Defendants' motions to dismiss. (*See* Docs. 27, 28.) Indeed, in his motion for a temporary restraining order (which Plaintiff references in his briefings), Plaintiff states that he was "traveling . . . with a damaged but functioning taillight." (Doc. 13, at 13.) Accordingly, Plaintiff has failed to allege that Bennett lacked probable cause to believe that Plaintiff violated Tennessee's taillight statute.

Similarly, Plaintiff does not allege in his complaint that he gave Bennett his driver's license. (*See generally* Doc. 1.) Regardless, the video Plaintiff recorded shows Bennett requesting Plaintiff's license multiple times over a five-minute period, and each time Plaintiff refused to give it him.[5] (*See Tulis Video*, at 0:00–5:00.) Because Plaintiff refused to produce his license, Bennett had probable cause to arrest him. *See Crouch v. Elliott*, No. 4:04-CV-96, 2005 WL 2122057, at *5 (E.D. Tenn. Sept. 1, 2005) ("Once plaintiff failed to produce his drivers license, [the defendant officer] had grounds to arrest him pursuant to T.C.A. § 55-50-351.").

Plaintiff does not argue that Bennett did not have probable cause to believe that his taillight was broken or that Plaintiff failed to produce his license. Plaintiff's theory is simply that Bennett did not have the authority to arrest him. (*See* Doc. 1, at 36 (arguing that "Blinkered tag bulbs, damaged taillights, expired registration plates, failure to use an indicator, tinted windows, speeding and like breaches are not arrestable crimes without a warrant . . . unless they meet the public offense standard.").) Plaintiff argues that he can only be arrested without a warrant for "public offenses" which he argues must be "akin to breach of the peace" or "disorderly conduct." (Doc. 1, at 43–44.) This argument has several issues, the first being that it runs headlong into Supreme Court precedent. The Supreme Court considered and rejected an identical argument in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001). In *Atwater*, the plaintiff argued that

---

[5] Indeed, Plaintiff initially refused to tell Bennett whether he even had a valid driver's license.

"founding-era common-law rules forbade peace officers to make warrantless misdemeanor arrests except in cases of breach of the peace." 532 U.S. at 327 (internal quotations omitted). The Supreme Court rejected this argument and instead held that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."[6] *Id*. at 354.

Plaintiff further claims that he was "under no obligation to yield" to Bennett's "baseless demand to exhibit a driver license," because he was not traveling "in commerce." (Doc. 1, at 30.) Plaintiff based his theory off how a federal statute defines "motor vehicle."[7] (*See* Doc. 1, at 13 n.3 (citing 18 U.S.C. § 31).) Plaintiff argues that his car is not a "motor vehicle" unless he is using it for commercial purposes under this federal definition. In addition to not making logical sense, Plaintiff's theory is foreclosed by case law. Despite what Plaintiff may believe, his theory that he does not need a driver's license when traveling for personal reasons is not new or persuasive. It is frequently raised and just as frequently rejected. Tennessee courts have addressed this argument and found it "utterly without merit." *State v. Lozano*, No. M201701250CCAR3CD, 2018 WL 4275919, at *4 (Tenn. Crim. App. Sept. 7, 2018). Federal

---

[6] It is certainly true that states can choose to limit warrantless arrests for minor offenses. *See Atwater*, 532 U.S. at 352 (noting that "Many jurisdictions, moreover, have chosen to impose more restrictive safeguards through statutes limiting warrantless arrests for minor offenses."). Insofar as Plaintiff claims Tennessee law prohibits arrests for traffic offenses, he is wrong. Tennessee courts have repeatedly addressed and dismissed this argument many times. *See State v. Williams*, No. M2012-00242-CCA-R3CD, 2012 WL 4841547, at *2 (Tenn. Crim. App. Oct. 3, 2012) (collecting cases).

[7] Plaintiff was arrested for a violation of Tennessee law. Tennessee law defines the term "motor vehicle" broadly and without any reference to commerce. *See* Tenn. Code Ann. § 55-1-103(c). Tennessee courts have been clear that automobiles are motor vehicles as defined by this statute. *See State v. Booher*, 978 S.W.2d 953, 956 (Tenn. Crim. App. 1997) (rejecting argument that an automobile is not a "motor vehicle" and concluding that "appellant's 1985 Dodge Daytona is a motor vehicle").

courts also frequently and summarily reject Plaintiff's theory. *See*, *e.g.*, *Barnhart v. Dilinger*, No. 3:16-CV-2597, 2020 WL 7024670, at *1 (N.D. Ohio Nov. 30, 2020) (rejecting a plaintiff's theory that "he was a traveler and that state law driver's-license requirements violated the Constitution and federal law"). That is the correct course of action here.[8]

## V. CONCLUSION

For the above reasons, Defendants' motions to dismiss (Docs. 14, 16) are **GRANTED.**

**AN APPROPRIATE JUDGMENT SHALL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**

---

[8] Plaintiff's theory as to why Hamilton County is liable is not entirely clear. "A municipality may be liable for a constitutional violation caused by individuals when those individuals acted pursuant to an official policy of the municipality." *Voyticky*, 412 F.3d at 679 (citing *Monnell v. New York City Dept. of Social Services*, 436 U.S. 658, 691 (1978)). However, "[f]or municipal liability to exist, [ ] a constitutional violation must take place." *Id*. (citations omitted). Because there was no constitutional violation in this case, there is no liability for Hamilton County.